## Smith et ux. v. Turner et al.

(Decided March 10, 1933.)

G. C. WILSON for appellants.
J. K. P. TURNER and CRAFT & STANFILL for appellees.

Opinion of the Court by Judge Thomas—Reversing.

On December 1, 1927, the appellants and plaintiffs, C. B. Smith and wife, conveyed to Piercy and Floyd Turner, who are brothers, a lot and the building thereon in Hazard, Ky., together with a merchandise stock contained in its first story, and also the store fixtures. While not so stated in the deed, the proof shows that the building and lot were estimated by the parties at $5,500, the fixtures in the store at $1,200, and the stock of goods at $1,800, making the total sum of $8,500. The deed made no mention of any sale of any of the personal property, and recited the consideration for it as $8,500; $2,000 of which was paid in cash, $2,200 by vendees conveying to Smith another piece of real property, $2,500 by the assumption of a mortgage on the property in the favor of a bank in Hazard, and for the remaining $1,800 the vendees executed three notes to the vendors (plaintiffs), one for $500, one for $550, and a third one for $750, all of which is so recited in the deed. A lien was also retained therein on the real property to secure the unpaid total purchase price consisting of the three notes mentioned and the $2,500 indebtedness due the bank, but the lien securing the latter was made superior to the one securing the other three notes. Possession was immediately taken by the vendees, and they commenced to and did operate the store, the second story of which had been made into a residence and was occupied by the vendees and their father and mother. Mismanagement or other causes soon dissipated the stock of merchandise, and the firm, consisting of the two brothers, went out of business. They then conveyed the property to their mother, the appellee, Mrs. Sally Ann Turner, and she later conveyed it to the appellees, Curt Feltner and his wife, Martha Feltner, and they owned it at the time of the filing of this action in the Perry circuit court by plaintiffs against defendants to recover judgment on the $550 and the $750 notes, supra, and to enforce their lien against the conveyed realty. Neither of the brothers answered, and judgment by default was taken against them. Mrs. Sally Turner, their mother, answered, alleging a scattering and, we think, wholly insufficient defense, but which the court sustained and rendered judgment in her favor. In her answer she stated that

plaintiffs took advantage of her two inexperienced sons and sold the property to them for an exorbitant price; but that was denied, and no proof was offered by defendants upon that issue. On the contrary, C. B. Smith testified that the property was amply worth the price agreed to be paid for it, and no one denied that testimony.

In another paragraph of her answer as amended she averred the facts as hereinbefore stated concerning the consideration and the aliquot parts of it represented by the two classes of property sold, and charged that by mistake or oversight or fraud the deed did not represent the facts, in that it failed to state the distinct parts of the entire consideration of $8,500 that represented the prices agreed to be paid for the real estate, and for the personal property; that payments had been made sufficient to extinguish the value of the real estate ($5,500); and that the notes sued on represented a part of the price agreed to be paid for the personal property, and because thereof no lien could be asserted on the real estate to satisfy the notes executed in payment of the personal property, although a lien on the real estate was retained in the deed for their satisfaction.

The Feltners answered and denied that the deed expressly retained a lien on the land for the satisfaction of the notes sued on. In a second paragraph, which they made a cross-petition against Mrs. Turner, they declared on the warranty contained in her deed to them, and alleged that they had paid the debt of $2,500 due the bank as they had agreed to do, and asked that if a lien should be upheld and enforced in favor of plaintiff against the land, then they be adjudged a superior lien, by subrogation, to the extent of the $2,500 superior lien that they had discharged in favor of the bank, and for other appropriate relief against the vendor Mrs. Turner.

Plaintiffs demurred to the defensive pleadings of both Mrs. Turner and the Feltners, each of which was overruled, and plaintiffs then replied to those pleadings denying their material averments, thus forming the issues. Evidence was taken by depositions, and upon final submission the court rendered the judgment hereinbefore referred to, and plaintiffs prosecute this appeal.

At the outset it may be stated that no rights of the Feltners against Mrs. Turner, growing out of her warranty in her deed to them, is involved on this appeal, since under the judgment appealed from there was no determination of any such matters. The only judgment rendered was a reformation of the deed in accordance with the prayer of Mrs. Turner's answer, and the court then concluded that under such reformation plaintiffs were not entitled to assert their alleged lien, and the petition was dismissed in so far as it sought that relief. Our task therefore is confined to the inquiry as to whether that judgment is or is not correct. The clause in the deed retaining the lien is thus expressed: "It is further agreed by the parties hereto that the purchase money lien note of $2,500, above referred to, shall constitute a first and superior lien on the property herein conveyed, and that the other notes (two of which are here involved) are inferior and second to same." The attorneys for the Feltners in their brief, as we interpret it, concede that the excerpt from the deed retains a lien on the realty subordinate to the bank debt of $2,500 to secure the note sued on. Such conclusion on our part arises from this language found in their brief: "The $2,500 note referred to was a note owing and payable to the Perry county state bank. This deed made that a prior and superior lien to the other notes set out in the deed." Counsel for Mrs. Turner intimates in his brief a contrary view, but he neither elaborates upon it, nor cites any authority to sustain it. We agree with counsel representing the Feltners, and which is clearly supported by the language employed in the deed for that purpose.

It will be noticed that it says that the bank note "shall constitute a first and superior lien" on the property conveyed and that "the other notes are inferior and second to same," which is tantamount to saying that the second notes are likewise liens, but inferior to the one retained to secure the bank note. No one can read that language and arrive at any other conclusion than that the parties intended to and did retain a lien to secure all deferred payments, but provided that one should be superior over the other, and we will dispose of the case on the theory that a lien was retained in plaintiff's deed to the Turner brothers to secure the notes sued on.

Before taking up the decisive legal question in the case, we deem it proper to point out the specific mistake relied on by Mrs. Turner for reforming the deed, and which was the one upon which the court sustained the prayer of her pleading and reformed it in accordance with what he determined were the proven facts. The language of her answer presenting that issue stated: "This answering defendant states that by mistake on the part of Piercy Turner and Floyd Turner, and by either mutual mistake on the part of the plaintiffs, or through fraud on the part of the defendants, in procuring the drafting of the deed of conveyance from the plaintiffs, to the said Floyd Turner and Piercy Turner, the said deed was drawn so as to show that the said notes were executed in part payment of the house and lot instead of the stock of goods, and which is not in accordance with the true agreement or contract between them in regard to the purchase of the house and lot, fixture and stock of goods."

The judgment in sustaining that allegation was and is in this language: "Said deed does not express or conform to the true agreement previously made between the parties thereto, which it was intended to express and to which it was intended by the parties to conform, in this, the deed as drafted shows the whole $8,500 was the consideration for the conveyance of the real estate set out in the deed, when according to the evidence for both the plaintiffs and the defendants, such is not the case, but that $3,000 or at least some part of the amount set out in the deed was for store fixtures and a stock of goods sold at the time by the plaintiffs to Piercy Turner and Floyd Turner and the court is of the opinion that more than the amount of the notes sued on herein was represented by the price of the store fixtures and stock of goods, and that such part of the amount expressed in the deed as represented the price of the stock of goods and store fixtures was not intended to be expressed in the deed as part of the purchase price for the real estate conveyed," etc.

It will thus be seen that the only mistake relied on by Mrs. Turner, and the only one adjudged by the court, was the failure to state in the deed the distinct and separate amount of the consideration agreed to be paid for each of the two classes of property purchased,

and to allocate those portions to the respective classes of property; when the only mistake that could serve the purpose of defendants, including Mrs. Turner, was the retention of a lien in the deed to pay all deferred notes, whether they represented a part of the consideration agreed to be paid for the real estate, or for the personal property. If the deed had separated the entire consideration as contended for by Mrs. Turner, and in conformity with the reformation that the court decreed, but had at the same time retained a lien on the real estate for the payment of the notes representing the price of the personal property (the latter of which we have found to be true), it would be a valid and enforceable one against the real estate. Therefore, our statement in a former part of this opinion that the court erred in denying plaintiff's right to the lien, notwithstanding he may have been correct on the immaterial reformation that he made, and from which it results that the demurrers to all defensive pleadings of all defendants should have been sustained instead of overruled.

The material issue in this case is not argued by counsel for either side. It is: Whether or not a lien may be retained in a deed conveying real estate to secure the price of personal property that is sold at the same time by the vendor to the vendee? In the discussion of that question we will confine ourselves exclusively to expressly retained liens, and not to equitable ones as between vendor and vendee, in the absence of an agreed and retained one. Much has been written in the books upon the rights of innocent purchasers, incumbrancers, and creditors when the deed fails to express and point out the fact of deferred payments and no lien is expressly retained. Practically all cases agree that, as between vendor and vendee, a lien may be asserted in favor of the former for any part of the unpaid consideration of the conveyed real estate, independently of anything that the deed might say touching the subject. But there is much discussion with reference to the rights of strangers to the deed of any of the classes supra. However, as we have seen, a lien was retained in the deed involved here, and the only defense is, that it was to secure the price of personal property, and not any part of the price of the real estate so attempted to be incumbered.

122

The text in 27 R. C. L. page 606, paragraph 557, in discussing reserved or express liens in deeds, says: "The lien reserved on the face of the conveyance is regarded as a specific lien, forming an original substantive charge on the estate thus conveyed, and as affecting all persons who may subsequently come into possession of the estate with notice, either actual or constructive, of its existence. Where an express lien is reserved, the law does not raise an implied lien, and the rights of the parties depend on their contract and not on the mere implication of law." Likewise, the text in 39 Cyc. 1804, in dealing with the same subject here involved, says: "But where a lien is expressly reserved, its extent does not depend upon the interest of the vendor, but upon the contract of the parties as evidenced by the instrument containing the reserva- tion." Further along, and on page 1805, the text con- tinues by saying: "But where realty and personalty are sold for a gross sum, the vendor may under the terms of the contract of sale have a lien upon both the realty and personalty."

In support of the latter excerpt the author cites the case of Doty v. Deposit Building & Loan Associa- tion, 103 Ky. 710, 46 S. W. 219, 221, 47 S. W. 433, 20 Ky. Law Rep. 625, 43 L. R. A. 551. In that case, Judge DuRelle, speaking for the court, discusses mainly equit- able liens, and their effect on purchasers, creditors, and incumbrancers. In doing so he says, in substance, that in sales of both classes of property of the nature we have here for a lump consideration, the vendor "can reach the realty, the sale of which was effected at the same time and by the same agreement. The case seems to us strictly analogous to the case of a sale in gross of two lots of land for an agreed lumping consideration, a part of which is unpaid at the date of the conveyance. Undoubtedly, in such case, either lot (no equities inter- vening) might be subjected to the payment of the un- paid purchase money." If that may be done, a for- tiori, could the same relief be decreed where an express lien was created, even against a stranger possessing either actual or constructive notice. The notice would destroy his equities entitling him to assert his rights as an innocent and bona fide holder. In other words, if it were competent, as we have so determined, to create the lien for the price of the transferred per-

sonalty by retaining it in the deed conveying the realty, it becomes as effectual as if only notes representing a part of the purchase price of the real estate were secured by the lien, and the recording of that deed would give constructive notice to all subseqeunt parties dealing with the land.

The reason underlying the rule as so declared is (as pointed out in the citations, supra) that the lien expressly retained in the deed is a contractual one mutually agreed upon by the parties thereto. In such cases the vendor says to his vendee, "I will not transfer to you the title to the realty I am conveying, except upon the condition that you consent to its encumbrance as security for $——," and then the vendee accepts the deed containing such a stipulation which constitutes his agreement thereto. In that event the vendor stipulates for and the vendee agrees that the amount so mentioned shall consitute and become an incumbrance upon the title after conveyance in favor of the owner of the debt, regardless of what it may represent. There has not been pointed out to us, nor have we been able to find, any authority whereby such agreements are forbidden. There is no fraud contained in them, nor do they violate any principle of public policy. That being true, there can be no legal obstacle in the way of the parties so agreeing, and when so done the proper recording of the deed is constructive notice to the world of its existence. There being no mistake in this case in the retention of the lien to secure the particular notes sued on, and it being one legally created, and of which all defendants had at least constructive notice, the court erred in denying its enforcement to the extent of plaintiff's debt, interest, and costs. The rights of defendants as between themselves are not determined for the reasons hereinbefore stated.

Wherefore, the judgment is reversed, with directions to set it aside and to render one in conformity with this opinion, and for such other proceedings as are not inconsistent herewith.