First National Bank & Trust Company of Racine, Trustee, Plaintiff, vs. Vegel and others, Defendants. [Two appeals.]

*April 5—May 1, 1934.*

For the plaintiff there were briefs by *Thompson, Myers & Helm* of Racine, and oral argument by *William D. Thompson.*

For the defendants Aronin and Paulsen there was a brief by *Benson & Butchart* of Racine, and oral argument by *Donald A. Butchart.*

For the defendant Tomek there was a brief by *Simmons, Walker, Wratten & Sporer* of Racine, and oral argument by *Charles F. Wratten.*

For the defendant Lincoln Building & Loan Association there was a brief by *Chas. Krenzke,* attorney, and *Vilas H. Whaley* of counsel, both of Racine, and oral argument by *Mr. Whaley.*

ROSENBERRY, C. J. We shall in the disposition of the questions raised bottom the decision upon the facts of this case and not enter upon a general discussion of the matters involved. The trust deed in this case is not one of the elaborate documents sometimes presented to courts for interpretation. It was upon a printed form and apparently one in common use. After describing the obligations to be secured and the property, the conditions upon which the title is to be held by the trustee are stated to be, among others:

"If the party of the first part shall well and truly pay, or cause to be paid, the sums of money above mentioned at the times and in the manner above mentioned and shall well and truly in all respects keep and perform the conditions of said obligations (which are made part hereof as if here again inserted) and the conditions of this instrument, whether hereinbefore or hereinafter written, then this indenture and said obligation shall be void, else valid."

From this it clearly appears that if the obligations secured by the trust deed are paid in accordance with their terms, the

trustee has no duties to perform except to reconvey the premises. It is then provided that if default be made either in the payments or in other matters to be kept and performed by the mortgagors, it is the duty of the trustee to declare all of the obligations due "and thereupon to foreclose this indenture by action in the proper court, for the benefit of and as trustee for all the holders of said obligations," either by court action or by advertisement. It is then provided that the trustee shall out of the proceeds pay, first, all costs, expenses, taxes, etc.; second, the principal and interest of said obligations to the proper holders thereof upon due presentation of the same; and third, the surplus, if any, to the party of the first part. The bonds and coupons are payable by their terms to the bearer upon presentation and surrender The trust deed also provides:

"The party of the first part shall not be entitled to any release, discharge or reconveyance; unless otherwise expressly agreed in writing—except upon exhibition to the trustee of all the said obligations and coupons duly canceled."

This instrument by its terms clearly indicates that payment was to be made at the office of M. J. Becker Company, not by the trustee but by the mortgagors; that when the obligations had been paid and canceled, the mortgagor should exhibit the same to the trustee, whereupon it became the duty of the trustee to execute a release, discharge, or reconveyance.

When the defendant association delivered its check to Becker, it received from the trustee as trustee a satisfaction of the mortgage as follows:

"I hereby certify that the mortgage [here was inserted the names of the mortgagors, mortgagee, date, time, place, and document number of recording] is fully paid and satisfied."

The trustee did not certify that the terms of the trust deed which conferred upon him authority to release, discharge, or

reconvey had been complied with. The only person or persons interested in the discharge of a mortgage which has in fact been paid are the holders of the legal title or some interest therein. Purchasers of the obligations secured by the trust deed in this case knew that there was no authority in the trustee to release the mortgage unless and until the canceled obligations were exhibited to him in accordance with the provisions of the trust deed. Likewise every person relying upon the record title to the lands in question was charged with notice of the fact that the trustee had no authority to execute a release or reconveyance except upon exhibition to him of the canceled obligations. The ordinary mortgage of course contains no provision with respect to its satisfaction or the terms and conditions upon which a satisfaction shall be made. Upon payment the statute makes it the duty of a mortgagor to satisfy and discharge the mortgage. Had the trustee certified in accordance with the terms of the trust deed that the obligations secured thereby had been paid and canceled and that the same had been exhibited to him, the record would have disclosed at least apparent authority for him to release the mortgage. Not being authorized by the terms of the trust instrument to accept payment, those dealing with the title were chargeable with knowledge of the fact that in the absence of compliance with the terms of the trust deed, the trustee had no authority to release the mortgage. *Schroeder v. Arcade Theater Co.* 175 Wis. 79 at p. 104, 184 N. W. 542, and cases cited.

The defendant association and the defendants Paulsen and Aronin all knew that the obligations secured by the trust deed had not been paid and canceled and the canceled vouchers exhibited to the trustee at the time the satisfaction of the mortgage was delivered to them, because the money was being borrowed for the express purpose of making payment and the satisfaction was delivered contemporaneously with the delivery of the check and at a time, therefore, when it

was impossible for the canceled obligations to be exhibited to the trustee. The trustee having no authority to accept payment, in placing the funds in his hands, they made the trustee their agent to pay and discharge the bonds. We say "they" because Aronin was personally liable upon the obligations by reason of a clause in the Vegel deed to him by virtue of which he assumed and agreed to pay the amount due on the mortgage. As between Aronin and Vegel, who was the original mortgagor, Aronin was primarily liable for the amount of the indebtedness. In making payment the defendant association acted as agent both of Aronin and Paulsen. It was the agent of Paulsen because he was procuring the legal title to the premises and was making a mortgage, the proceeds of which were to be used to discharge the indebtedness. Each of the principals as well as their agent was chargeable with knowledge that by the terms of the trust deed and the bonds, the money was to be paid not to Becker but to the holder of the obligations, at the office of M. J. Becker Company. Seven and one-half months later when Tomek came to purchase the mortgage given by Paulsen to Aronin, the same defect in the authority of the trustee to execute and deliver a satisfaction was apparent of record, that is, there was nothing of record to show that the canceled obligations secured by the trust deed had been exhibited to the trustee. The insertion of this provision in the trust deed could not have been a mere idle formality. While it was no doubt inserted for the benefit of the mortgagor, it also served the purpose of limiting the authority of the trustee to reconvey or release. The only authority to receive payment conferred upon the trustee by the trust deed is to receive payment after the commencement of an action to foreclose. There being no foreclosure in this case prior to the conveyances with which we are dealing, we are not called upon to consider the effect of a payment under such circumstances.

We are cited to a good many cases dealing with the powers of trustees under trust deeds. Trust deeds are variable in form and in their covenants, and the term "trust deed" has very little significance except when it is used with reference to some particular instrument. It is in all essential respects a mortgage, but by the introduction of the trustee a great variety of contract relationships are set up, and in no two of the instruments ordinarily referred to as trust deeds are the powers, duties, and obligations of the respective parties the same. Therefore a holding that under certain circumstances a trustee is authorized to do that or not authorized to do this has little weight unless the instrument had the same provisions respecting the authority of the trustee as the one under consideration.

It is argued that because plaintiff was appointed successor trustee to Michell J. Becker, it cannot maintain this action, payment having been made to Becker, its predecessor. In accepting the $5,041.81 check from the defendant association, as we have already shown, Becker was acting as the agent of Aronin and Paulsen, not pursuant to an authority conferred upon him by the terms of the trust deed. The rights of the bondholders were therefore not affected by payment to Becker, and as a matter of fact as between the parties to the transaction the Becker satisfaction was void and of no effect.

It is further argued that the bondholders having purchased the bonds, knowing that Michell J. Becker was named as trustee in the trust deed securing the payment of the bonds, the bondholders by that act authorized Michell J. Becker to receive payment. As already pointed out, the bond itself provided that it should be paid not by the trustee but by the mortgagor at the office of M. J. Becker Company upon presentation and surrender of the obligations.

It is further argued that by making inquiry of the trustee as to whether or not he had funds with which to pay the

bonds, plaintiff authorized payment to the trustee. This contention is without support. The bondholders stood upon the terms of their contract, and if funds had theretofore been intrusted to Becker for payment to the holders of the obligations, Becker then acted not as the agent of the bondholders but as the agent of the payors. The bondholders did not leave their bonds with Becker for collection. How a person purchasing a bond by that act authorized the trustee to become his agent to receive payment of the bond is difficult to understand. The kind and extent of authority conferred upon the trustee is derived not from the act of the person purchasing the bond, but from the terms of the trust deed itself. If the bond or the trust deed had provided that payment might be made to the trustee for the bondholder, no doubt such a covenant would have been valid and binding upon subsequent holders. The contract of the makers was to pay to the bearer or to the registered owner. By the weight of authority a mortgagor making payment to the trustee without surrender of the security has notice of the trustee's want of authority to receive payment. 2 Jones, Mortgages, p. 705, § 1222. Decisions appearing to hold to the contrary are, so far as we have discovered, based either upon the language of the trust deed which provided that payment might be made to the trustee or upon circumstances which were held to create an equitable estoppel.

From what has been said it follows that the defendant Tomek was not entitled to rely upon the record release of the Vegel mortgage and in doing so was not protected against the lien of the Vegel mortgage; that the lien of the trust deed is a first lien upon the property as against all of the defendants, and the plaintiff is entitled to enforce the same by way of foreclosure. In all other respects the judgment of the trial court is affirmed.

The matter will be entirely disposed of if the defendant association shall pay and discharge the Vegel mortgage. If

that course is not pursued, then the plaintiff will be entitled upon a sale of the premises to a satisfaction of its mortgage with costs and disbursements. The defendants Paulsen and Aronin will be entitled to exoneration to the extent of the amount necessary to pay and discharge the first mortgage with costs and disbursements, for the reason that the defendant association was negligent in the discharge of its duty as agent of Paulsen and Aronin. Upon a foreclosure the defendant association will be entitled to a second lien for the amount of the mortgage given to it by Paulsen after application of the amount necessary to discharge the first mortgage. The defendant Tomek will then be entitled to a third lien for the amount of his loan. We shall not attempt to state all of the details, amounts, or form of judgment as that is sufficiently indicated from what is said.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with directions to enter judgment as indicated in the opinion.