# Smith et ux. v. Feltner et ux.

(Decided June 7, 1935.)

834

G. C. WILSON for appellants.

W. A. STANFILL for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This is the second appeal of this case, our decision rendered in the first being now reported in Smith v. Turner, 248 Ky. 116, 58 S. W. (2d) 258, 88 A. L. R. 87, reference to which is here made both for a full statement of the facts out of which this litigation arose and for an accurate understanding as to just what was the issue determined upon the first appeal, which appellee contends is controlling of our decision upon this appeal under the law of the case rule.

The facts disclosed by the record, so far as here material for determining the one question now presented (the priority of lien of the parties in the property here involved), is briefly as follows:

In December, 1927, the appellants, C. B. Smith and wife, conveyed to Percy and Floyd Turner a lot and building thereon in Hazard, Ky., for a consideration recited in the deed thereto of $8,500. However, while not stated in the deed, the proof shows the building and lot were estimated at $5,500; its fixtures at $1,200; and stock of goods in the building at $1,800. The deed made no reference to the recited purchase price including as a part of it, the sale price of the fixtures and merchandise sold at the same time by the Smiths to the Turners, but it reserved a vendor's lien upon the real estate for the entire amount of the recited purchase price of $8,500, as if it were the consideration paid only for the real estate.

The vendees, by way of paying this purchase price of $8,500, paid $2,000 in cash; $2,200 by the conveyance

of a certain piece of property so valued; $2,500 by the assumption of a mortgage lien in that amount, then an encumbrance upon the property for vendor's debt owing to the bank of Hazard; and $1,800, the remainder, by three deferred purchase money notes of $500, $550, and $750, respectively.

The vendees at once took possession of the purchased store and stock and operated the business for a short while, or until it failed, when, having then sold and disposed of all the purchased merchandise, they conveyed the real estate to their mother, Mrs. Sallie Turner, who claimed to have furnished her personal capital to vendees for their purchase of this real estate, who, during their tenure thereof, had made no further payment to the Smiths upon its purchase price except to satisfy the first of the three above-mentioned purchase-money notes for $500.

Further, it is shown that upon the conveyance of this lot and building to Mrs. Turner by her sons, the Smiths' vendees, she in turn conveyed it to the appellees, Curt Feltner and wife, for a consideration of $6,500, which was paid by the Feltners' assumption of the aforementioned Smiths' mortgage debt owing the Hazard bank of $2,500 and the remainder, or $4,000, in cash to her.

The proof shows that the Feltners, when buying the property, consulted with an attorney as to its title, who testifies that after an examination made of same he advised the Feltners that it was clear, except for the encumbrance thereon of the mortgage lien of $2,500 owing the bank. This lien the Feltners then assumed and paid, taking from the bank a release of record therefor, which is as follows:

"The conditions of this purchase money lien note having been complied with, and the lien therein retained paid in full, the same is hereby satisfied and released."

At this stage in the proceedings, the original vendors, Smith and wife (who will hereinafter be referred to as appellants), brought suit for the recovery of their two remaining unpaid purchase money notes, amounting to $1,300, against their vendees and makers thereof, Percy and Floyd Turner, asking that they be adjudged

a lien upon the property therefor and its enforcement, and also making Mrs. Turner, the Feltners, and the mortgagee bank parties defendant, and called upon them to answer and set up what, if any, lien or interest they had in the property they sought to subject to the payment of their notes.

The defendant Mrs. Turner answered, pleading that appellants had sold her sons this real estate at the price of $5,500, and that of the further amount of $3,000, recited in the deed as constituting a part of the consideration so paid, $1,800 thereof represented the price of personal property or merchandise sold them by the Smiths at the time, all of which had been disposed of by them and which had never constituted any part of the purchase price, the deed recited as paid alone for the lot and building for which reason appellants pleaded they were not entitled to assert a vendors' lien against the realty for its payment. Also, the defendant Feltners, hereinafter referred to as appellees, filed answer and cross-petition, alleging that in their purchase of this real estate they had paid as a part of its purchase price the mortgage debt of the appellants owing to the Hazard Bank, as to which the Smiths' deed executed to the Turners provided that:

"It is further agreed by the parties hereto that the purchase money lien note of $2,500 above referred to shall constitute a first and superior lien on the property herein conveyed, and that the other notes are inferior and second to same,"

and that by reason of their payment of this said superior lien to the bank, they were entitled to be subrogated to its position, as holders of a lien in such amount prior and superior to that of the appellants' secondary lien reserved against the property, for payment of the notes sued on.

Upon submission of the cause for judgment upon the pleadings and proof taken, the trial court adjudged the appellants entitled only to a judgment, which was awarded them, against their vendees, Percy and Floyd Turner, for the amount of the notes sued on, and dismissed their petition as to the appellees, upon the ground that they had no lien against the property under the provisions of their deed reserving only a secondary

lien thereon for the payment of the notes, treated as given in consideration of the merchandise sold them.

The appellants, complaining of this first judgment, prosecuted an appeal therefrom, upon which first appeal we held the judgment to be erroneous in denying appellants a lien against the property under the terms of their deed, reserving one, and reversed the judgment, saying:

"The material issue in this case * * * is: Whether or not a lien may be retained in a deed conveying real estate to secure the price of personal property that is sold at the same time by the vendor to the vendee?"

In disposing of this one question decided upon the appeal, the opinion continues:

"In other words, if it were competent, as we have so determined, to create the lien for the price of the transferred personalty by retaining it in the deed conveying the realty, it becomes as effectual as if only notes representing a part of the purchase price of the real estate were secured by the lien, and the recording of that deed would give constructive notice to all subsequent parties dealing with the land. * * *

"There being no mistake in this case in the retention of the lien to secure the particular notes sued on, and it being one legally created, and of which all defendants had at least constructive notice, the court erred in denying its enforcement to the extent of plaintiff's debt, interest and cost. The rights of defendants as between themselves are not determined * * *."

For such error of the trial court, the judgment was reversed and the cause remanded, with directions to set it aside and render one in conformity with the opinion, and for other proceedings not inconsistent therewith. Upon its return to the lower court, the appellants and appellees (no longer including the Turners) renewed the litigation for the determination as to which of the two liens described in the deed and respectively claimed by them was superior.

Both parties proceeded to take additional proof, and the appellants filed an amended reply to the answer

and cross-petition as amended, which had been filed by the appellees. By this amended reply, the appellants averred that the Feltners "were mere volunteers in paying off the $2,500 debt of the Smiths to the Perry County State Bank and that in doing so they only did what they agreed to do with the Turners at the time the Feltners bought the land from the Turners."

Demurrer to the reply being overruled, appellants controverted of record its allegations, when the case was submitted to the court for judgment; whereupon it was again adjudged that the appellants recover judgment for their debt sued on against Percy and Floyd Turner, and, further, that they had a lien therefor on the real estate here involved, but held that such lien was inferior and secondary to the lien adjudged appellees, the Feltners, upon the property in the sum of $2,500 or the amount of the mortgage lien paid by them to the bank.

Again complaining of the trial court's judgment as erroneous, the Smiths have appealed, contending that their lien adjudged against the property is not only not inferior to the lien adjudged the appellees for the amount of the appellant's mortgage lien paid the bank by the appellees, but that there is now only their one purchase-money lien against the property, by reason of the fact that the mortgage lien, by the appellants' deed made superior to that it·reserved for purchase money, was, when paid to the bank by the appellees, thereby extinguished, and therefore it cannot, after its cancellation, be effective as an equitable assignment by the creditor bank of it and again revived, by now subrogating them to its former position, by reason of their paying it.

The appellees, on the other hand, contend that we are upon this second appeal controlled in our decision of the question of priority of lien, here presented, by our decision of that question which they argue was made upon the first appeal, bringing it within the law of the case rule, and also that upon their payment of the admittedly superior lien of mortgage held by the bank upon this property they were entitled to be subrogated to its position, with the result that they are now the holders of such lien, which by the very terms of the deed was made a superior lien against the land to the

lien reserved by appellants for payment of their purchase money notes, and therefore the trial court's judgment so holding should be upheld.

Considering now the first of these contentions, we deem it sufficient to say that the contention made that our decision of the question of priority of liens here presented is controlled by the law of the case rule is untenable for the reason that the question of priority of lien was not considered upon the first appeal. The court, in its opinion, expressly states that the only question there presented and decided is as to whether or not appellants had effectually reserved to themselves by the deed a vendor's lien upon the property for the purchase price of the personal property sold to their vendees at the time they sold them the real estate, that is, whether the deed, reserving a lien only against the latter, was also legally effective for the creation and reservation of a valid lien against the real property for the aggregate amount of the sale price of both. There, deciding this issue in the affirmative, the judgment of the trial court was reversed for its error in holding that it was not; that is, that appellants had reserved no valid lien against the real property for the amount of their notes sued on, which it is admitted represented or were given, only for the sale price of the personal property sold their vendees. Our decision, so determining and reversing the lower court's judgment upon such ground, went no further than to determine that the plaintiffs were entitled to a vendor's lien against the realty and did not purport to further extend the decision to the issue of the priority of lien between the parties.

So viewing the scope and holding of our opinion upon the first appeal, we conclude that the same does not support the contention that our decision of the present appeal, where the different question of priority rather than the existence of a lien is here presented, is controlled by the law of the case rule.

Turning next our attention to the decision of appellants' second contention made that appellees were not, as adjudged by the lower court, entitled to be subrogated to the bank's position as the holder of a superior lien or mortgage in the amount of $2,500 against the property, by reason of the appellees assuming and

paying the same, we deem it to be without merit, since same was paid by them as their own primary obligation.

By the facts of the case, as hereinabove set out, the appellees, in their purchase of this property, voluntarily assumed the payment to the mortgage bank of this superior mortgage lien as an agreed part payment of its contracted purchase price. In performing this part of their contract, by paying to the bank this lien which they had voluntarily assumed to pay as part of the purchase price of the property, they became the principal debtor or primarily liable for the payment of the mortgage debt, while their grantor, who, prior to the appellees' assumption of the debt, was the principal debtor, became upon appellees' assumption of it only, as between themselves, their surety for its payment.

The doctrine of subrogation, upon which the trial court's judgment was evidently based in awarding appellees a superior lien against the real estate, because of their having assumed and paid this superior lien of mortgage against it held by the bank, we are of the opinion was not in the situation shown here properly invoked and applied, in that the doctrine and practice of subrogation, being entirely of equitable origin and nature, is in its invocation and operation to be controlled and governed by the principles of equity, and only when an applicant has an equity to invoke and where innocent persons will not be injured thereby should a court interfere by its application to effect fair play and just results. The right to be subrogated to the securities of one whose claim has been paid depends upon the circumstances attending the payment of the debt, of which the security was an incident, as subrogation is a consequence which equity jurisprudence attaches only to certain conditions to compel the ultimate discharge of a debt by him who in good conscience ought to pay it. The parties may not have contracted for it either expressly or by legal implication; but if, in the performance of that contract which they did make, certain conditions have resulted which make it necessary for equity to interpose its authority in this respect, it will do so, provided that in so doing it will violate no law and not alter the contract. 25 R. C. L., pages 1313 to 1316. Such being the purpose and nature of this creation of equity, in opposition to the techni-

cal rules of law which liberate securities with the extinguishment of the original debt, its doctrine is inapplicable and unavailable to appellees' case, where appellees but paid his own rather than anothers debt a further limitation upon the rule is thus stated:

"Since a purchaser of land on which there is a mortgage, assuming payment of the mortgage as part of the purchase price, becomes the principal debtor, and his payment thereof operates in law as an extinguishment of the lien, and, being under no duty to buy the land, he is a volunteer, on paying the mortgage he is not entitled to be subrogated to the rights of the mortgagee, to the prejudice of a junior lien claimant of whose lien he had actual or constructive notice at the time of payment, in the absence of an agreement between the parties that he will be subrogated, or an assignment of the mortgage."

60 C. J., page 793. Caley v. Morgan, 16 N. E. 790. Again in volume 41, at page 737 of the same work, it is stated:

"As between each other with relation to the mortgage debt, the purchaser of mortgaged land who assumes and agrees to pay the debt becomes the principal debtor and the mortgagor or grantor is in the position of surety."

Compare, also, the cases of White v. Upton, 255 Ky. 562, 74 S. W. (2d) 924; Conway Savings Bank v. Vinick, 287 Mass. 448, 192 N. E. 81; Porter v. Engel, 286 Mass. 33, 189 N. E. 798; First National Bank & Trust Co. of Racine v. Vegel, 215 Wis. 359, 254 N. W. 537; Clevenger v. Rains et al. (Tenn. App.) 73 S. W. (2d) 1114.

While the doctrine of subrogation has been expanded in recent years and may now be said to be broad enough to include every instance in which one person pays a debt for which another is primarily answerable, and which, in good equity and conscience, should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the one making the payment and in discharge of an existing liability, it has not been extended (nor does the basic grounds for its very existence call for such extension) so as to cover a case

where, as here, the payment is made by one of a debt for which he, rather than another, is primarily answerable and which in equity should not have been discharged by another, by reason of his voluntary assumption of the debt, as a part or term of his contract of purchase of the encumbered property.

In the instant case it is admitted that the appellees, when purchasing the property in question from Mrs. Turner, expressly agreed with her (as a part of their contract of purchase) that they would assume and pay this mortgage encumbrance upon her property, for which she was then primarily liable, and that later, pursuant to such agreement, and by way of performing the same, they paid off this mortgage debt in the amount of $2,500, and thereby, paying the debt as their own, extinguished the mortgage encumbrance upon the property they were acquiring just as effectively as if they had satisfied and canceled the mortgage by paying over its amount to their grantor and she had paid the debt, in that they would alike in each instance have been, in so satisfying the mortgage debt, but paying a part of the agreed purchase price of the property they were acquiring from her.

Certainly, under these circumstances, there exists no cause or grounds for holding the mortgage, when so assumed and paid by them, as equitably assigned to the appellees as purchasers of the property, where, by reason of their assumption of the mortgage debt, it had become their own primary obligation. Certainly, in such instance, the mortgage lien is not to be regarded as assigned, but rather as canceled and extinguished, by its payment, when thus made by one assuming the position of principal debtor. That such was the result here upon appellees paying off the assumed mortgage was so understood by appellees is clearly shown, by reason of the fact that, upon their payment of it, they did not seek an assignment of the mortgage lien to them by its holder, the creditor bank, but instead had the bank release of record the mortgage as one paid in full and canceled.

It may be that the appellees, through having acted under the erroneous advice given them, that the property was free of encumbrance save the mortgage lien, will be called upon to pay more for the purchased prop-

erty than they had intended, by reason of the imposition of this unforeseen liability upon them to satisfy appellants' purchase-money lien had against it, as was adjudged their right upon the first appeal. Such result, however, is not to be avoided at the expense of appellants, as appellees must be charged with either actual or constructive notice of appellants' lien outstanding of record against the property when purchasing same from Mrs. Turner, without respect to what may be their right to reimbursement from Mrs. Turner of such amount as they may be called upon to pay the appellants upon their lien debt adjudged them against this property which Mrs. Turner has conveyed them with warranty. Appellants' deed, reserving such lien, being duly of record at the time of appellees' purchase of the property, appellees should not be permitted to recoup their loss suffered in this venture at the expense of or in derogation of appellants' rights to collect their purchase-money lien against the property by making such lien secondary as was here adjudged to the superior mortgage lien paid the bank, to which appellees asked to be subrogated even after the same no longer existed, by reason of its having now been fully paid and extinguished by the appellees.

Such being our view, it follows that the appellants' lien against the property, as adjudged them upon the first appeal of this case, is now (as between the parties hereto), we conclude, not only the superior but also the only existing lien now standing against the property which should be accordingly enforced against it, rather than as subject to any alleged lien claimed as held thereon by the appellees, as was by the trial court, we conceive, erroneously adjudged, for the reason we are of the opinion that the same no longer exists, having been extinguished by payment.

The decree of the learned chancellor, not being in accord with our views as hereinabove expressed, is reversed, and the case remanded, with instructions to enter judgment in lieu thereof consistent with this opinion.