Argued February 1; affirmed March 7; rehearing denied
April 18, 1939

# BELCHER *v.* BELCHER

(87 P. (2d) 762, 89 P. (2d) 593)

Department 2.

*Dorothy McCullough Lee* and *Reuben G. Lenske,* both of Portland, for appellant.

*J. N. Hart,* of Portland, for respondent.

BAILEY, J.  The plaintiff, J. C. Belcher, instituted this suit against the defendant Foy C. Belcher, to foreclose a mortgage on a parcel of land in Portland.  From a decree in favor of the plaintiff, the defendant appeals.

On April 10, 1924, Mrs. Ellen Belcher, mother of both the plaintiff and the defendant, executed and delivered to J. C. Belcher a note for $800, for money due from her to him, and secured the payment thereof by a second mortgage on property owned by her, namely, the west half of lots 1 and 2, block 61, town of Sellwood, within the corporate limits of the city of Portland.  At the time this mortgage was given there was a first mortgage on the property in favor of one Dickey, in the sum of $950.  The Dickey mortgage fell due in October, 1925, at which time Mrs. Belcher borrowed from the Bank of Sellwood the sum of $950 and secured the payment thereof by giving to the bank a first mortgage on the same property.  Both the Dickey and J. C. Belcher mortgages were satisfied of record, the latter having been released in order that the bank might have a first lien on the realty.

At the same time that the mortgage was given to the bank, Mrs. Belcher gave J. C. Belcher a new note dated October 14, 1925, for the sum of $800, and secured the payment of that note by a second mortgage on the same

property. This mortgage was recorded October 15, 1925, and is the one sought to be foreclosed in this suit. The last note given by Mrs. Belcher to her son was payable three years after date and provided as follows: ''Should the property, securing this note, be sold, for cash, or on contract, then this note to draw interest at eight per cent per annum from date of sale.''

Mrs. Belcher on January 22, 1929, conveyed the property to her son Foy C. Belcher, the defendant in this suit, by warranty deed subject to existing incumbrances against the property. As consideration for this conveyance the defendant paid his mother four dollars and agreed to assume and pay the taxes and street assessments against the property and the Bank of Sellwood mortgage. This deed was not filed for record until November 28, 1936. After receiving title to the property the defendant paid the delinquent taxes, amounting to $140.92, street assessments of $67.12, and the Bank of Sellwood mortgage.

■ The complaint is in the form usual in suits to foreclose mortgages on real property. It sets forth the conveyance of the property by the mortgagor to the defendant on the date hereinabove mentioned; that no part of the note, either principal or interest, has been paid; and that there is due and owing to plaintiff on the said note the sum of $800 with interest at eight per cent from January 22, 1929, the date when the property was conveyed by Mrs. Belcher to the defendant. The prayer is that the amount due on the note, together with a reasonable sum to be allowed as attorney's fees and plaintiff's costs and disbursements in this suit, be decreed to be a lien on the property covered by the

mortgage and that the same be foreclosed and the property sold.

The defendant's answer denies all the allegations of the complaint except that Ellen Belcher is a single woman and that she had conveyed to the defendant the mortgaged property. For a first affirmative defense the defendant alleges that any note or mortgage given by Ellen Belcher to the plaintiff was without consideration. A second affirmative defense states that the plaintiff and the defendant are the sons of Ellen Belcher and that about February, 1928, in consideration of love and affection between them and their mother, and the duty owed by them to her, they entered into an agreement whereby both agreed to pay to their mother the sum of $20 per month for her support for the rest of her life; that the defendant fully performed his part of the said agreement; and that the plaintiff paid the sum of $20 monthly for a period of approximately eight months but had otherwise failed to carry out his part of the agreement.

The answer sets forth as a third affirmative defense the giving of the mortgage on the property here involved to the Bank of Sellwood by Ellen Belcher, the inability of Ellen Belcher to pay the said mortgage and the taxes against the property, and the conveyance of that realty by her to the defendant upon the consideration that the son would pay the mortgage to the bank and pay taxes against the property. It is further averred that neither the defendant nor his mother, until approximately one month prior to the institution of this suit, had any knowledge of the existence of plaintiff's mortgage, and that Ellen Belcher had represented to the defendant that the only incumbrances against the property were the mortgage to the bank

and the taxes. The defendant further alleges that in reliance upon the representations made by his mother, and not knowing of the plaintiff's mortgage, he paid the first mortgage and the taxes against the property.

The prayer of the defendant asks that the suit be dismissed, or in the event that it should be found that the plaintiff has a valid mortgage on the property, that the court find that such mortgage has been paid and satisfied of record; or if the court should find that plaintiff's mortgage has not been paid, that it decree that the defendant be subrogated to the rights that the Bank of Sellwood would have had under its mortgage, had the same not been satisfied, and that the defendant be decreed a further lien on the property prior to the lien of plaintiff's mortgage, for the amount of taxes and street assessments paid by defendant.

The affirmative matter contained in the answer was put in issue by the reply. The first affirmative defense, *i. e.,* failure of consideration for the note, has been abandoned by the defendant. The circuit court found that there was no agreement between the defendant and the plaintiff as alleged in the defendant's second affirmative defense. We concur in that finding, without deeming it necessary to set forth and discuss the evidence in that connection.

The evidence is undisputed that the defendant paid to his mother the sum of four dollars in cash and assumed and agreed to pay, as the balance of the purchase price, the Bank of Sellwood mortgage and the taxes and assessments against the property. The defendant testified that he was told by his mother that the taxes, city liens and Bank of Sellwood mortgage were the only incumbrances against the property, and that he did not know of the plaintiff's mortgage until

about a month before this suit was instituted, when he acquired knowledge thereof by the plaintiff's requesting him to execute a new mortgage in lieu of the one sought to be foreclosed in this proceeding.

Mrs. Belcher testified that she did not know of the plaintiff's mortgage. She did, however, remember giving to the plaintiff in 1924 a mortgage to secure the payment of $800, which it was agreed between herself and the plaintiff was owing to him from her. With reference to her conveyance of the property to her son Foy she gave the following testimony:

"Q. And you still thought that that same mortgage, the first mortgage, was on the property when you deeded it over to Foy? A. Yes, . . . well, I didn't give it a thought."

At the time Mrs. Belcher gave Foy the deed to the property she requested, as expressed by the defendant, that it be held "in escrow" until her death, by which he apparently meant that she wished him to withhold it from record until that time. He neither searched the records nor caused them to be searched, to ascertain what liens there were against the property. As already stated, the defendant's deed was not recorded until November 28, 1936, and it was not until some time thereafter that the plaintiff knew of the conveyance of the property to the defendant. During all this time the defendant was living on the property with his mother.

There is a sharp and fairly even division of authority as to whether a purchaser of real property who discharges the superior lien of a first mortgage as part of the purchase price is entitled to be subrogated to the rights of the first mortgagee as against a recorded second or junior mortgage in those instances in

which the purchaser does not have actual knowledge of the existence of the junior incumbrance. In many of the decisions the rule requiring strict application of the doctrine of subrogation obtains, and in those cases the right of subrogation is denied. What is referred to as the liberal rule permits subrogation. For a collation of authorities supporting both rules, see the annotations in 37 A. L. R., beginning at page 384, and 113 A. L. R., beginning at page 958.

In *Kahn v. McConnell*, 37 Okla. 219, 131 P. 682, 47 L. R. A. (N. S.) 1189, wherein the strict rule is applied, the court in referring to a situation closely similar to the one here before us, said:

"The plaintiff's mortgage was of record. Wright had constructive notice of it, although it may not have been actual. It could have been ascertained by the exercise of reasonable diligence on his part in the examination of the records. He therefore bought the land charged with notice of the plaintiff's mortgage. The fact that he assumed the indebtedness to the bank and paid it did not give him the right of subrogation. In the matter of that payment he was a volunteer. He was under no duty to buy the land. He was under no duty to pay the first mortgage. He was negligent in doing so without examing the records, and can not escape the consequence of his own negligence by an appeal to the equitable doctrine of subrogation."

The right of subrogation was denied in the following cases also, wherein the purchaser paid off and had discharged a senior lien as part of the purchase price of real property, without actual knowledge of a recorded junior lien: *Stastny v. Pease*, 124 Iowa 587, 100 N. W. 482; *Kuhn v. National Bank of Holton*, 74 Kans. 456, 87 P. 551, 118 Am. St. Rep. 332; *Shirk v. Whitten*, 131 Ind. 455, 31 N. E. 87; *De Roberts v. Stiles*,

24 Wash. 611, 64 P. 795; *McDowell v. M. T. Jones Lumber Company*, 42 Tex. Civ. App. 260, 93 S. W. 476; *Conner v. Welch*, 51 Wis. 431, 8 N. W. 260; *Bank of Canton v. Nelson*, 173 Ga. 185, 160 S. E. 232; *Smith v. Feltner*, 259 Ky. 833, 83 S. W. (2d) 506; *Klopfenstein v. Chadbourne*, 105 Pa. Super. Ct. 530, 161 Atl. 642.

In the case of *Burgoon v. Lavezzo*, 92 Fed. (2d) 726, 113 A. L. R. 944, the circuit court of appeals for the District of Columbia, after discussing the two rules above mentioned and referring to the decisions in federal cases which were believed to be controlling, made the following observation:

"If there were no federal cases of highly persuasive character and no considerable number of authorities supporting the so-called liberal view, we should be much inclined toward accepting the strict one for this jurisdiction. Especially in the field of property transactions the decision of cases according to certain rules rather than according to the view of a chancellor as to what is equitable on the particular facts of each case is highly desirable. For, while the liberalization of law by equity was and is necessary and wholesome, it is not to be gainsaid that its price is an uncertainty of decision which should be extended with great caution. Moreover, the relief from their folly of those who in respect of contemplated property transactions do not consult available lien records seems more the task of the school than of the court."

The theory underlying the liberal view of the right of subrogation in instances in which the purchaser assumes or covenants to discharge a prior incumbrance as partial or entire consideration, without actual knowledge of inferior liens, is that the purchaser intended that the payment of the prior incumbrance should inure to his own benefit and not that of the junior incumbrancer, and that equity will treat such purchaser as

the assignee of the original incumbrance and will revive and enforce it for his benefit. In support of this reasoning some of the courts say that there is no equitable ground on which the holder of the junior lien could object to the keeping alive of the superior lien for the protection of the purchaser's interest.

The question before us does not appear to have been directly passed upon heretofore by this court. The appellant, however, attempts to draw an analogy between the decisions of other jurisdictions applying the so-called liberal rule and the decisions of this court holding that when the holder of a prior mortgage substitutes therefor a new one in ignorance of the existence of an intervening lien inferior to his, equity will, in the absence of intervening rights of third parties, restore the lien of the first mortgage and give it its original priority. In support of the right of the mortgagee in such situation, the appellant cites and relies upon: *Pearce v. Buell,* 22 Or. 29, 29 P. 78; *Capital Lumbering Co. v. Ryan,* 34 Or. 73, 54 P. 1093; *Title Guarantee Company v. Wrenn,* 35 Or. 62, 56 P. 271, 76 Am. St. Rep. 454; *Stitt v. Stringham,* 55 Or. 89, 105 P. 252; *Monese v. Struve,* 155 Or. 68, 62 P. (2d) 822. The first three of these cases state the rule as contended for by the appellant, relative to the right of subrogation of a mortgagee who releases his prior mortgage in ignorance of the existence of an intervening lien.

*Monese v. Struve,* supra, reannounces the rule which has prevailed in this state for many years, that if the holder of a prior lien forecloses the same and causes the property to be sold, without joining as defendant in the foreclosure suit the holder or holders of junior liens, the interest of the purchaser at such sale is not inferior to the rights of the junior lien holder, whose

interest may be barred by strict foreclosure. We do not believe that the principle there held to be controlling can be applied to the facts in the instant case.

In *Stitt v. Stringham,* supra, the defendant procured from one Marley his tax title to certain real property, had transferred to herself a note secured by a mortgage on the same property and later caused the mortgage securing the note to be satisfied of record. Thereafter the plaintiff purchased his mortgage, which was a junior lien to the one released, on the faith of the record showing the discharge of the first mortgage, and this court held that he was entitled to have the lien of his mortgage decreed a first lien on the property. The defendant contended that she was entitled in equity to be substituted in place of the original first mortgagee as the owner of the prior mortgage. In commenting on that situation the court spoke as follows:

"She was not personally liable to pay the debt, and a mere volunteer is not entitled to the aid of a court of equity; but the equitable doctrine of subrogation is frequently applied in favor of a vendee, who, although not personally liable, has paid the debt of another, which is a charge on the land, and which, if not paid, might cause him to lose his interest therein."

It will be observed that what the court there said about the equitable doctrine of subrogation was not in fact involved in that case, for the reason that it was decided that the holder of the second lien had purchased it in good faith and without knowledge of the conditions under which the first mortgage had been satisfied. Moreover, the defendant in causing the first mortgage to be discharged did not do so in payment or partial payment of the purchase price of the property.

In the instant case the appellant asks that the liberal rule as to subrogation be applied. He is requesting that he be granted a lien on the property for the amount which he paid to the Bank of Sellwood on the first mortgage, and the amount of taxes and assessments paid by him, together with interest at the rate of six per cent from and after the respective dates of such payments. His purchase of the property was made in January, 1929, and this suit was not instituted until November 18, 1937. During all that time the defendant was in possession of the property. He does not suggest that a reasonable rental, as due from him, be offset against his claim. Without offering himself to do equity, he asks that the equitable principle of subrogation be applied in his favor.

Regardless of the peculiar facts in the case at bar, we are in accord with the reasoning set forth in the excerpt quoted from *Kahn v. McConnell,* supra, denying the right of subrogation to a vendee who assumes and agrees to pay an existing indebtedness as part of the purchase price of real property, as attempted to be exercised against the holder of a recorded junior lien or mortgage. Such a rule makes it incumbent upon a purchaser to consult available records in regard to contemplated real property transactions. It also minimizes, as to those transactions, the effect of any uncertainty of representation between vendor and vendee concerning existing incumbrances of record.

The decree appealed from is affirmed; neither party to recover costs.

BELT and LUSK, JJ., concur.

RAND, C. J., concurs in the result.

Petition for rehearing denied April 18, 1939

ON PETITION FOR REHEARING

(89 P. (2d) 593)

BAILEY, J. In the petition for rehearing filed by Foy C. Belcher, the appellant, appears the following:

"Since the statements on the first paragraph appearing on page 394 of volume 28 of Advance Sheets will go down to posterity and may affect future decisions and also since in one respect that paragraph bears upon the merits and equities of the case, we shall first direct our attention to that paragraph. The court says: 'During all that time the defendant was in possession of the property. He does not suggest that a reasonable rental, as due from him, be offset against his claim. Without offering himself to do equity, he asks that the equitable principle of subrogation be applied in his favor.'

"This paragraph if allowed to stand would indicate that a mortgagee would be entitled to rent for property even before the mortgage was ever foreclosed. It is our belief that the court does not intend to lay down such a rule as final. Regardless of the consideration that the court gives to the defendant on this petition or on a rehearing, it would seem unadvisable to permit such conclusion to stand."

In our former opinion it was pointed out that in 1929 Foy C. Belcher purchased from his mother the property here involved. The consideration of the purchase was the payment of four dollars to his mother and the agreement on his part to assume and pay the existing city liens and taxes against the property and the first mortgage held by the Bank of Sellwood.

■ In his answer in the suit instituted by the plaintiff to foreclose his mortgage the defendant asked that the mortgage to the Bank of Sellwood be reinstated; that he be subrogated to the rights of the bank under that

mortgage; and that he be decreed a lien on the real property covered by both the bank's mortgage and that of the plaintiff prior and superior to plaintiff's lien, for the amount which the defendant has paid in taxes and assessments and to discharge the Bank of Sellwood mortgage. This claim is made by the defendant not in the capacity of owner of the legal title of the property but as one asserting the right of subrogation to the bank's lien under the pre-existing mortgage. Therefore, since he has been in possession of the property, enjoying the use of it, since 1929, he would be, in enforcing a claim such as above asserted, virtually in the position of a mortgagee in possession; and the reasonable rental value of the property should in that case be applied toward extinguishing the indebtedness due him as such mortgagee: 19 R. C. L. 326-328; 41 C. J. 612.

The statement above quoted from our former opinion was therein made in answer to the defendant's assertion that the equities of the case lay solely with him, and did not in any way affect the legal proposition on which our decision rested. Inasmuch as the appellant voices a belief that that statement might lead to confusion in the future, we have considered it advisable to give the explanation herein contained.

■ In a "supplement to petition for rehearing" the appellant has suggested that in the event a rehearing be not granted the decree should at least be modified so as to grant to Mrs. Belcher, the mother of the appellant and the respondent, a life interest in the property covered by the mortgage sought to be foreclosed by the respondent. In this connection our attention is directed to the testimony of the plaintiff, who stated that he was willing that his mother occupy the property "without

having to pay interest or rent, as long as she lives''.
Courts are not empowered to make new contracts be-
tween litigants or between one of the litigants and a
third party.

■ The only other question raised by the petition and
the supplement is a reiteration of the defendant's con-
tention that he is entitled to subrogation to the rights of
the mortgagee whose claim he satisfied. We see no
reason for departing from our former holding. The
petition for rehearing is therefore denied.

RAND, C. J., and BELT and LUSK, JJ., concur.