Argued and submitted December 5, 1988, reversed and remanded for further
proceedings November 8, 1989

RUSHER et al,
*Appellants,*

*v.*

BUNKER et al,
*Defendants,*

*and*

BENJAMIN FRANKLIN FEDERAL
SAVINGS & LOAN ASSOCIATION,
*Respondent.*

(CV 85-206; CA A46715)

782 P2d 170

William J. Storie, Pendleton, argued the cause and filed
the briefs for appellants. With him on the briefs was Storie &
Olsen, Pendleton.

Douglas E. Hojem, Pendleton, argued the cause for respondent. With him on the brief was Corey, Byler, Rew, Lorenzen & Hojem, Pendleton.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Plaintiffs brought this action for foreclosure of a mortgage on real property owned by defendants Bunker. They appeal from the judgment of foreclosure, arguing that their mortgage was entitled to priority over a trust deed held by Benjamin Franklin Federal Savings & Loan Association (Benjamin Franklin).[1]

On July 31, 1979, the Bunkers gave plaintiffs three promissory notes, secured by a pledge of stock and by a real property mortgage. The mortgage, which was captioned "Second Mortgage," applied to several lots in two tracts. Only one of those lots, lot 3, is involved in this appeal. Although the mortgage recited that lot 3 was encumbered by a prior mortgage, the prior mortgage actually encumbered a different lot. However, at the time that plaintiffs received their mortgage, lot 3 was encumbered by various liens totaling $37,422. Plaintiffs recorded their mortgage on August 6, 1979.

On August 13, 1979, Benjamin Franklin loaned $52,000 to the Bunkers, and they executed a promissory note in Benjamin Franklin's favor. Payment of the note was secured by a trust deed, executed on the same date, which covered lot 3. Before giving the Bunkers the loan, Benjamin Franklin ordered a preliminary title report on lot 3. That report, dated July 17, 1979, disclosed the $37,422 in liens, but revealed no prior mortgages. Benjamin Franklin intended that part of the loan would be used to discharge the liens and that it would acquire a first priority position on lot 3. Benjamin Franklin did not know that the Bunkers intended to give a mortgage to plaintiffs on the same lot subsequent to the date of the preliminary report. Before disbursing the loan proceeds on August 13, Benjamin Franklin instructed the title company to re-examine the encumbrances on lot 3 to ascertain whether there had been any changes in title. Although the title company was aware of plaintiffs' recorded mortgage, it advised

---

[1] The trust deed was originally held by Western Heritage Federal Savings and Loan Association, Benjamin Franklin's predecessor. For convenience, we refer only to Benjamin Franklin.

Benjamin Franklin that there had been no changes.[2] Benjamin Franklin then recorded its trust deed and discharged the liens with the loan proceeds.

The Bunkers subsequently defaulted on their payments to plaintiffs, who then brought this action. The trial court granted foreclosure but held that Benjamin Franklin was subrogated to the senior liens that it had discharged and had priority over plaintiffs' mortgage to the extent of the amounts it had paid to satisfy the liens, less the amount of the Bunkers' repayments of principal on the Benjamin Franklin loan.

■     Plaintiffs argue that the trial court erred in applying the doctrine of equitable subrogation and giving Benjamin Franklin's trust deed priority over plaintiffs' mortgage. The doctrine of equitable subrogation was explained in *Metropolitan Life Ins. Co. v. Craven,* 164 Or 274, 101 P2d 237 (1940):

> "[O]ne, advancing money to discharge a prior lien on real or personal property and taking a new mortgage as security, is held to be entitled to subrogation to the prior lien as against the holder of an intervening lien of which he was excusably ignorant." 164 Or at 279.

.     Plaintiffs' principal argument is that, because their mortgage was recorded and Benjamin Franklin had constructive notice of it, Benjamin Franklin could not have been excusably ignorant as a matter of law. Although this precise question has not been addressed by the Oregon appellate courts, the weight of authority from other jurisdictions is that record notice does not, in itself, defeat the ability of a lender to become equitably subrogated to a senior encumbrance that the lender discharges. As explained in Osborne, *Mortgages,* 573 § 282 (2d ed, 1970):

> "Constructive notice under recording statutes has been regarded as an obstacle to subrogation of the lender by some courts. Again, the better view is that constructive notice

---

[2] The title company officer who handled the transaction testified that he knew that plaintiffs' mortgage had been recorded since the date of the preliminary report but that, on the basis of the caption "Second Mortgage" and the reference to a prior mortgage on lot 3, it was his opinion that plaintiffs' mortgage was intended to be, and as a matter of law was, subordinate to the subsequent trust deed given to Benjamin Franklin. Benjamin Franklin agreed at oral argument that the title company officer's analysis was incorrect.

should be disregarded. * * * It can have no relevancy on the question whether the lender actually expected to get priority of security in the property because that can be inferred only from his actual knowledge. Insofar as it implies that there is culpability in the lender, the answer is the same as was given above in respect to negligence. Fault of the person at whose expense another has been enriched fortuitously, provided that the other has not been misled or harmed, should not bar restitution." (Footnotes omitted.)

On several occasions, the Supreme Court has considered and answered affirmatively the related question of whether the holder of a mortgage who cancels or releases it and takes a second mortgage, without actual knowledge of recorded intervening liens, may be restored to the priority of the original mortgage. *South Beach Lumber Corp. v. Swank,* 210 Or 383, 311 P2d 1018 (1957); *Holzmeyer v. Van Doren,* 172 Or 176, 139 P2d 778 (1943); *Chase v. McKenzie,* 81 Or 429, 159 P 1025 (1916); *Pearce v. Buell,* 22 Or 29, 29 P 78 (1892). The court noted in *Swank* that, in the absence of any showing that the intervening lienors' rights "will be unfairly impressed * * * [t]he release of the first mortgage, if it cannot be undone, will represent for the [intervenors] manna, not from heaven, but from the pocketbook of [their] adversaries." 210 Or at 393.

Plaintiffs rely on *High v. Davis,* 283 Or 315, 584 P2d 725 (1978), where the court refused to allow equitable subrogation in favor of a mortgagee that was on inquiry notice, from a preliminary title report and title insurance policies, of the intervening rights that it sought to subordinate. The court said:

"[T]he principles which permit subrogation in these instances are equitable. [The mortgagee] had notice of the existence of membership agreements creating hunting and fishing rights, and chose to proceed with the mortgage transaction without further investigation. Under these circumstances, there are insufficient equities in its favor to convince us that it should be subrogated to the rights of prior lienors whose liens were discharged out of the mortgage proceeds, and thus to foreclose those hunting and fishing rights." 283 Or at 335.

Plaintiffs appear to read *High* as holding that subrogation is never allowable when the party claiming it is on inquiry notice of intervening rights. We do not read the case that broadly, but understand the court to have decided the

subrogation issue on the facts of the case and on the relative equities favoring the parties. The practical effect of allowing subrogation and giving the mortgagee priority in *High* would have been to impair or destroy the *enjoyment* of the intervening hunting and fishing rights. Moreover, the knowledge that the mortgagee had was not only sufficient to give rise to inquiry about the specific interests; it was also sufficient in itself to reveal that there were *some* intervening rights. No comparable equities weigh in plaintiffs' favor here.

Plaintiffs also rely on *Belcher v. Belcher,* 161 Or 341, 87 P2d 762, 89 P2d 593 (1939), where the court adopted a rule

> "denying the right of subrogation to a vender who assumes and agrees to pay an existing indebtedness as part of the purchase price of real property, as attempted to be exercised against the holder of a recorded junior lien or mortgage. Such a rule makes it incumbent upon a purchaser to consult available records in regard to contemplated real property transactions. It also minimizes, as to those transactions, the effect of any uncertainty of representation between vendor and vendee concerning existing incumbrances [*sic*] of record." 161 Or at 351.

The court stated its awareness of its holdings allowing "the right of subrogation of a mortgagee who releases his prior mortgage in ignorance of the existence of an intervening lien." 161 Or at 349. It is clear that *Belcher* decides only whether subrogation is available to *purchasers* of real property that is subject to recorded intervening encumbrances.

The Oregon case that is most similar factually to this one is *Metropolitan Life Ins. Co. v. Craven, supra.* The plaintiff, the assignee of a mortgage that had discharged a prior first mortgage, invoked the subrogation doctrine to gain priority over the judgment lien of the defendant. The mortgagee had obtained an abstract of title from a "reputable abstracting company" and had sought an attorney's advice concerning the abstract before making the loan secured by the mortgage. Neither discovered the judgment lien. In addition, the borrower had misrepresented on his loan application that there were no judgments affecting the property. The court said:

> "We think that where the holder of the junior lien will stand in the same position if subrogation is allowed, as that in which he stood originally, and misrepresentation is made by the owner of the property to the effect that there is no junior

lien, and the party advancing the money to defray the prior lien is not guilty of negligence, but secures an abstract from a reputable abstract company, submits the abstract to skilled attorneys and receives a report to the effect that it does not disclose any such junior lien upon the property involved, the right of substitution or subrogation to the priority of the prior lien is available." 164 Or at 283.

The major difference between *Metropolitan Life* and this case is that, there, the lien over which priority was sought arose from a judgment that was of record, rather than a recorded mortgage.

There is little in the Oregon case law to support plaintiffs' proposition that constructive notice arising from recording is, *per se,* incompatible with a lender's claim to equitable subrogation. The Supreme Court has rejected the analogous proposition in several cases dealing with mortgagees' releases of their prior mortgages and has accepted the analogous principle in one case dealing with a purchaser's effort to be subrogated to a senior lien on the purchased property. By and large, however, the cases have emphasized the competing equities that arise from factual variables and have avoided across-the-board rules of the kind that plaintiffs urge. We decline to adopt a *per se* rule. We *might* agree that a failure to search the record by a lender on record notice would be a significant negative factor in a comparison of equities. However, Benjamin Franklin *did* have the record searched, and the failure to detect the status of plaintiffs' mortgage was due in part to the misleading caption "Second Mortgage" and to inadvertent misinformation in the instrument itself. *See* n 2, *supra.* We conclude that subrogation is appropriate in this case.

■  Plaintiffs contend that ORS 93.710(1) requires that their mortgage be given priority over Benjamin Franklin's trust deed. That statute provides, in relevant part:

"Any instrument creating a mortgage, trust deed, or assignment for security purposes relating to any of the interests or estates in real property referred to in this subsection, which is executed by the person from whom the mortgage, trust deed, or assignment for security purposes is intended to be given, and acknowledged or proved in the manner provided for the acknowledgment or proof of other conveyances, may be

indexed and recorded in the records of mortgages of real property in the county where such real property is located. Such recordation, whether the instrument be recorded prior to or subsequent to May 29, 1963, constitutes notice to third persons of the rights of the parties under the instrument irrespective of whether the party granted such interest or estate is in possession of the real property."[3]

Plaintiffs reason that, because the mortgage was recorded before the trust deed and because Benjamin Franklin had constructive notice of the mortgage, the mortgage has priority over the trust deed under ORS 93.710. Plaintiffs also contend that the enactment of the statute constituted a legislative overruling of the subrogation cases that predated it. They argue:

"[I]n 1941 after [*Metropolitan Life Ins. Co. v. Craven, supra,*] was decided, the legislature enacted OCLA 70-138A, the predecessor statute to ORS 93.710. The legislature was on notice of *Metropolitan Life,* and chose to enact the notice statute. The significance of the statutes is further enhanced by the fact that the most recent Oregon Supreme Court case addressing equitable subrogation, *High v. Davis,* [*supra,*] denied the application of subrogation based on notice."

We do not agree. The doctrine of subrogation has always had, and continues to have, the effect of giving priority to interests that are later in time than the interests that are subordinated to them. Stated differently, the subrogation doctrine creates an exception to the general rule, reflected in ORS 93.710 and other recording statutes, that priority is based on record seniority. Plaintiffs offer nothing to support their argument that ORS 93.710 was intended as a legislative repeal of the judicial doctrine. The significance of *High v. Davis, supra,* would appear to be the opposite of what plaintiffs claim for it. Although subrogation was disallowed in that case, based on the facts, the court expressly noted that "[i]t is possible for a mortgagee to be subrogated to the rights of a prior lienor." 283 Or at 355. *High* was decided long after the predecessor of ORS

---

[3] We quote the statute in its present form. At the times of the relevant transactions, the statute did not refer to recording of mortgages. That omission was remedied by Or Laws 1987, ch 225, § 2. Given the basis for our disposition of plaintiffs' argument concerning ORS 93.710, we need not address the significance, if any, of the amendment or of the absence of a reference to mortgages in the statute at the time of the events in question.

93.710 was enacted. Moreover, *South Beach Lumber Corp. v. Swank, supra,* and *Holzmeyer'v. Van Doren, supra,* where the court adhered to the rule that recorded intervening interests could be subordinated to a prior mortgagees' new security, were also decided after the enactment of the statute. We reject plaintiffs' statutory argument.

■ Plaintiffs' remaining contention is that the court's calculation of the value of Benjamin Franklin's subrogated interest—amounts paid to discharge the prior liens less the amount of principal repayments received from the Bunkers—"fails to take into account the fact that the prior contracts and mortgages had smaller balances, lower interest rates and longer periods for payment." Plaintiffs maintain that Benjamin Franklin may "only be allowed to be subrogated to the balance of the prior outstanding debts less the amount of principal [that the] Bunkers would have paid on those debts before the date of default." Benjamin Franklin argues that the trial court applied the law correctly in computing its subrogated interest.[4] Neither party cites authority to support its position, and we find no dispositive authority.

Subrogation is a doctrine of exact substitution, under which the subrogee acquires the position, rights and liabilities of the subrogor. *See, e.g., State ex rel Healy v. Smither,* 290 Or 827, 626 P2d 356 (1981). We therefore agree with plaintiffs that Benjamin Franklin's subrogation interests are identical to the interests that the discharged prior encumbrancers would have had in this action, had they not been discharged. The value of those interests at the time of discharge should be reduced by the amount of principal and interest on the prior encumbrances that would have become due between the times of discharge and default.

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

[4] It also argues that plaintiffs did not sufficiently preserve the claim of error in the trial court. We disagree.