C. R. HODGE, Respondent, v. MAUD H. DUNLOP and Charles N. Wells, Appellants.

(190 N. W. 551.)

**Subrogation — one who acquires title in ignorance of defects and pays mortgage, being subrogated to mortgagee's rights, held entitled to have release canceled.**

1. It is a general rule that acquiring title and causing the lien of a mort-

Note.—On right to reinstatement of mortgage released or discharged by mistake, see notes in 58 L.R.A. 788; 26 L.R.A.(N.S.) 816; and L.R.A.1917E, 1055.

See also 19 R. C. L. 740–742; 3 R. C. L. Supp. 950; 5 R. C. L. Supp. 1036.

gage to be canceled by payment, in ignorance of defects in the title will afford ground of equitable relief for cancelation of the release and for subrogation to the lien of the mortgage released, where there is no element of estoppel, the rights of bona fide parties are not affected, and the restoration of the released mortgage will place the holder of the junior lien in no worse position than he was at the time the mortgage was released.

**Subrogation — purchaser who in good faith paid first mortgage entitled to restoration thereof and subrogation to rights of holder as against a junior lienor on discovery of defective title.**

2. In the instant case the plaintiff purchased a tract of land from one who represented that he was the owner of the tract in fee simple, subject alone to two certain mortgages. After acquiring such title the plaintiff, in good faith and in reliance on the representations made by his vendor, paid the first mortgage and caused the same to be released. Subsequently, plaintiff learned that his vendor owned only one half of the fee simple estate; and that there was a judgment against the owner of the other one half of such estate, which was a lien junior to the mortgage released. There are no subsequent purchasers, and the holder of the judgment has in no manner changed his position, and the restoration of the mortgage will place him in no worse position than he was at the time the mortgage was released.

*Held*, that the plaintiff is entitled to have the mortgage restored and to be subrogated to the rights of the holder of the mortgage as against the owner of the judgment.

Opinion filed October 23, 1922.

Subrogation, 37 Cyc. p. 449 n. 58; p. 451 n. 62.

From a judgment of the District Court of Stutsman County, *Nuessle,* J., defendant, Wells, appeals.

Affirmed.

*John A. Jorgenson,* for appellant.

*A. W. Aylmer* and *A. L. Aylmer,* for respondent.

CHRISTIANSON, J.    This is an action to restore and foreclose a certain mortgage alleged to have been released through mistake.  The material and undisputed facts are as follows: Cecil Dunlop and Maud Dunlop (husband and wife) were the joint owners of 160 acres of land situated in Stutsman county in this state.  On June 6, 1916, they executed and delivered a first mortgage on said land to W. B. S. Trimble Company to secure the sum of $1,750.  That mortgage was duly recorded in the office of the register of deeds of said county on June 9, 1916.  On January 3, 1917, said Cecil and Maud Dunlop executed and

delivered a second mortgage on said land to the Citizens' National Bank of Jamestown to secure the sum of $2,000 which said mortgage was recorded in the office of the register of deeds of said county, August 20, 1917. On April 23, 1919, there was docketed in the office of the clerk of the district court of Stutsman county, a judgment for the sum of $2,003.32 in favor of Charles N. Wells and against Cecil and Maud Dunlop. In May, 1919, the judgment was released as to Cecil Dunlop. In May, 1919, said Cecil Dunlop was adjudged a bankrupt and one Nierling was duly appointed trustee of said bankrupt's estate. On April 26, 1920, said trustee sold the land to the plaintiff. Thereafter a trustee's deed was executed which was duly recorded February 8, 1921. Prior to such sale the trustee represented to the plaintiff and all other bidders that he as trustee of said bankrupt's estate held the fee title to the entire quarter section of land subject only to the two mortgages above described. The plaintiff purchased the premises on the strength of these representations and knew nothing whatever about the interest of said Maud Dunlop in said premises or the judgment held by the defendant Wells until in April, 1921. In the meantime and on or about February 12, 1921, the plaintiff paid the then holder of the first mortgage the full amount of said mortgage with accrued interest thereon and received a satisfaction of such mortgage which was duly recorded in the office of the register of deeds on February 26, 1921. On or about April 24, 1920, the plaintiff paid the Citizens National Bank of Jamestown the amount due on the second mortgage and received an assignment of said mortgage and the notes secured thereby. In April, 1921, he discovered that Maud Dunlop owned a half interest in the land, also, the existence of the judgment in favor of the defendant Wells, and he thereupon brought this action to restore the first mortgage which had been satisfied of record and to foreclose the same. The plaintiff is the cashier of a bank in Jamestown and has occupied that position for some fifteen or twenty years. The trial court found that the mortgage was released through mistake, and ordered judgment in favor of the plaintiff. The defendant Wells has appealed.

Appellant contends that the plaintiff failed to establish that he released the mortgage through mistake, as that term is defined by § 5854, Comp. Laws, 1913. That section provides: "Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person

making the mistake and consisting in: 1. An unconscious ignorance or forgetfulness of a fact past or present material to the contract; or, 2. Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing, which has not existed."

The appellant contends that it was a neglect of legal duty on the part of the plaintiff not to examine the records or obtain an abstract of title before he caused the mortgage to be released.

We are unable to agree with this contention. It is undisputed that the trustee in bankruptcy made specific representations as to the condition of the title; that the plaintiff bought the land and subsequently paid the amount due on the mortgage and caused the same to be released in reliance upon such representations. There is no contention that the appellant has in any manner been induced to change his position or has lost any substantial right by the action of the plaintiff in releasing the mortgage. The general rule established by the great weight of authority is that under such circumstances equity will grant relief and restore the parties to their original position.

"The rule of law, indeed, is well established," said Bruce, Ch. J., speaking for this court in Strehlow v. Fee, 36 N. D. 59–66, 161 N. W. 719, "that where an instrument has been surrendered or discharged, or an encumbrance or charge has been satisfied through mistake, the party making the same is entitled to be replaced in his original position, provided only that other creditors have not been induced by the action of the plaintiff or petitioner to change their position, and have not lost any substantial and material rights by such action."

Ruling Case Law (19 R. C. L. p. 469) says: "There can be no doubt of the authority of a court of equity, in a proper case, to reinstate a satisfied mortgage upon real estate, when it appears to have been given under mistake or inadvertence, or procured by fraud. Indeed it is a common thing for courts of equity to relieve parties who have by mistake discharged mortgages upon record, and to fully protect them from the consequences of their acts when such relief will not result prejudicially to third or innocent persons. One of the most common mistakes connected with releases of mortgages is where the mortgage is renewed and the prior lien released in ignorance of intervening rights. Ignorance in such a case is regarded in equity as equivalent to a mistake, and

relief will be granted where there is no other element of estoppel, and where the party seeking the relief has not delayed action."

Nor was the established equitable rule changed by § 5854, supra, as appellant's counsel asserts that it was. In our opinion that section announces no new rule, but is merely a statutory enactment of the well-established equitable rule on the subject. See 2 Pom. Eq. Jur. 4th ed. p. 1709. Section 5854, supra, in the identical language in which it appears in our statute originally appeared in the proposed civil code of New York and was thence adopted in the civil code of California (2 Pom. Eq. Jur. 4th ed. p. 1708) and was thence adopted and embodied in its present form in the civil code of the territory of Dakota of 1877, Civil Code 1877, § 888. The definition of mistake as embodied in that section has been approved by the courts of states where the section has not been adopted as part of the statutory law. See § 2 Pom. Eq. Jur. 4th ed. p. 1708. As already indicated the section was adopted in the state of California prior to its adoption in this state. In considering a question of reinstatement of a mortgage released through mistake the supreme court of California (White v. Stevenson, 144 Cal. 104, 77 Pac. 830) said: "Mistake is the foundation of one of the chief branches of equity jurisprudence, and the exercise of equity jurisdiction is frequently had where a contract as written does not express the terms of the actual agreement between the parties. This jurisdiction is often invoked to set aside or cancel the release of a mortgage that has been given under a mistake of fact, or contrary to the evident intention of the parties; notably when, upon the execution of a new mortgage in renewal or as a substitute for a prior one, the former mortgage is released in ignorance of the existence of an intervening lien. Equity looks at the intention of the parties, and will control the effect of a release executed under a mistake of fact, or cause it to be canceled, when no intervening rights have accrued by reason of the mistake. Jones, Mortg. 971; Story, Eq. Jur. 167; Pom. Eq. Jur. 871; Swift v. Kraemer, 13 Cal. 526, 73 Am. Dec. 603; Birrell v. Schie, 9 Cal. 104; Matzen v. Shaeffer, 65 Cal. 81, 3 Pac. 92; Shaffer v. McCloskey, 101 Cal. 576, 36 Pac. 196; Pearce v. Buell, 22 Or. 29, 29 Pac. 78; Hutchinson v. Swartsweller, 31 N. J. Eq. 205; Bruse v. Nelson, 35 Iowa, 157; Young v. Shaner, 73 Iowa, 555, 5 Am. St. Rep. 701, 35 N. W. 629;

Geib v. Reynolds, 35 Minn. 331, 28 N. W. 923.   'The principle which runs through all cases of this description,' says Barculo, J., in Barnes v. Camack, 1 Barb. 392, 'is that, when the legal rights of the parties have been changed by mistake, equity restores them to their former condition, when it can be done without interfering with any new rights acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to other persons.' "   See, also, Bormann v. Hatfield (Bormann v. Vyverberg) 96 Wash. 270, 164 Pac. 921, L.R.A.1917E, 1052, and extended note.

It is well settled that the equitable rule under consideration is applicable to a situation like that presented here, viz.:   Where a person after acquiring title to certain premises causes the lien of a mortgage to be extinguished by payment or merger, in ignorance of defects in the title.   In such case the owner of the premises is entitled to be subrogated to the lien of the mortgage as against an intervening judgment junior to the mortgage.   Thus the supreme court of New York held that a purchaser of premises subject to a mortgage who paid the mortgage and caused the same to be canceled, in ignorance of the judgment lien against a former owner that was subsequent to the mortgage, was entitled to have the same reinstated, as the mortgage lien has precedence over the judgment.   Barnes v. Mott, 64 N. Y. 397, 21 Am. Rep. 625. In this case the court said: "Upon payment of the mortgage by the then owners of the premises, they were entitled to all the rights of the mortgagee, and to an assignment of the mortgage; and having caused the same to be satisfied under circumstances authorizing an inference of mistake of fact, equity will presume such mistake, and give the party the benefit of the equitable right of subrogation.   To do so in this case is to prevent manifest injustice and hardship, and interferes with no superior intervening equities."   See, also, Ayers v. Adams, 82 Ind. 109; French v. DeBow, 38 Mich. 708; Bormann v. Hatfield (Bormann v. Vyverberg) 96 Wash. 270, L.R.A.1917E, 1052, 164 Pac. 921; 19 R. C. L. p. 472; Pom. Eq. Jur. 3d ed. §§ 791–793; 27 Cyc. 1381.

In the case at bar, it would be a manifest injustice to the plaintiff to refuse him the relief which he seeks.   No one has been injured by, or has changed his position on account of, the release of the mortgage.   It

is undisputed that the mortgage was released in ignorance of the record, and in reliance upon the representations made by the trustee.

The judgment rendered by the trial court was right. It is affirmed.

BIRDZELL, Ch. J., and ROBINSON, BRONSON, and GRACE, JJ., concur.