Argued June 16; affirmed July 7; rehearing denied
September 8, 1943

## HOLZMEYER ET AL. *v.* VAN DOREN ET AL.

(139 P. (2d) 778)

Before BAILEY, Chief Justice, and BELT, ROSSMAN,
LUSK and BRAND, Associate Justices.

*William C. Palmer,* of Portland, for appellant.

*W. G. Hare,* of Hillsboro (Frank G. Dick, of The
Dalles, on the brief) for respondents Casper Holzmeyer

and Henry F. Holzmeyer, administrator of Johanna Holzmeyer's estate.

ROSSMAN, J. This appeal concerns a note and mortgage, both executed February 8, 1930, by Charles and Lulu Van Doren, husband and wife, who are two of the three defendants. The payees of the note and the mortgagees of the other instrument are Casper Holzmeyer, one of the plaintiffs (to whom we shall refer as the plaintiff), and Johanna Holzmeyer, deceased wife of that plaintiff. The appeal also concerns a satisfaction and a release of the mortgage signed by the plaintiff May 17, 1940, and a deed signed by the two Van Dorens concurrently with the execution and delivery of the release. The deed described the real property which was covered by the mortgage and conveyed it to the plaintiff. The appeal affects yet another instrument. It is a judgment entered in favor of the defendant-appellant, William C. Palmer, and against the defendant, Charles Van Doren, November 20, 1930, in the circuit court of this state in the amount of $1,535.89.

The plaintiffs are two in number: the aforementioned Casper Holzmeyer and Henry F. Holzmeyer, administrator of the estate of the aforementioned Johanna Holzmeyer, deceased. We have already mentioned the defendants: the appellant Palmer and the Van Dorens. The Van Dorens made no appearance in the circuit court and have made none in this court. The plaintiffs are, therefore, the respondents. Palmer is the sole appellant.

The decree attacked by this appeal (1) reinstated aforementioned note and mortgage; the former is in the denomination of $3,500 and the latter secured its payment; (2) cancelled the aforementioned release;

(3) cancelled the aforementioned deed; (4) found that there was due and payable to the plaintiffs upon the reinstated note $3,500 plus interest; (5) held that the lien of the mortgage was superior to the interests of all of the defendants; (6) found that the lien of the appellant's judgment was subordinate to the lien of the mortgage; and (7) ordered the foreclosure of the mortgage and the sale of the property, and directed that the proceeds of the sale be first applied to the satisfaction of the mortgage, next, to the satisfaction of the judgment, and that the overplus, if any, be paid to the Van Dorens.

The appellant Palmer presents three assignments of error. They are:

"I. That the trial court erred in overruling defendant and appellant Palmer's demurrer to the amended complaint.

"II. That the court erred in overruling appellant's objection to the introduction of any evidence in regard to the allegations of the amended complaint, the objections being set forth on Page 2 of the transcript of testimony.

"III. The court erred in entering the decree in favor of the plaintiffs and against the defendant and appellant Palmer."

The phraseology of the assignments of error is too general. A part of the appellant's brief which refers to the first assignment of error gives us a better impression as to what the appellant has in mind by his first assignment of error. That part of the brief says:

"This assignment of error may be divided into three parts: (a) That the estate of Johanna Holzmeyer has no interest in this suit; (b) that the amended complaint on its face must show that there is no adequate remedy at law; (c) that the

amended complaint on its face must show that the mistake alleged in the amended complaint by the plaintiff was not due to the plaintiff's negligence. The burden is on the plaintiff to show clearly and satisfactorily, not only that the alleged mistake exists, but that it was mutual and was not caused by plaintiff's own negligence."

■ The objection that the plaintiffs' remedy at law is adequate clearly possesses no merit. The principal purposes of this suit are to render the lien of the appellant's judgment inferior to the lien of the mortgage and foreclose the latter. The remedy which the plaintiffs seek is obtainable only in equity.

A decision as to whether or not the estate of Johanna Holzmeyer has an interest in this suit will be unnecessary if the other contention is decided adversely to the appellant.

The second and third assignments of error present the same contention as is made in the third subdivision of the first assignment of error. Before particularizing upon it, it is well to state that the complaint alleges that the release and the deed were signed and exchanged in ignorance of the appellant's judgment. It further alleges that the plaintiff and the Van Dorens were mutually mistaken and that none of them intended to afford the appellant's judgment a priority. The third subdivision of the first assignment of error presents the controlling contention; it is that equity will not decree a cancellation of the release and of the deed and a reinstatement of the note and mortgage, if the mistake which caused the plaintiff to sign the release and accept a deed from the mortgagors was due to his negligence. Thus we see that the right of the plaintiffs to have the note and mortgage reinstated

is contested only on the ground that the plaintiff's negligence in having failed to discover the appellant's judgment denies him the relief which he seeks. We shall now undertake to determine the merits of that contention. The facts are largely free from dispute.

February 8, 1930, the plaintiff and his wife, who is now deceased, loaned to their neighbors, Charles and Lulu Van Doren, two of the three defendants, $3,500. As evidence of the debt that was thus created, they accepted from the Van Dorens a promissory note payable in five years to "Casper Holzmeyer and Johanna Holzmeyer or the survivor." The note was secured by a mortgage which described a farm owned by the Van Dorens in Washington county. That note and mortgage are the instruments to which we have already referred. The mortgage was duly recorded.

October 24, 1930, the appellant instituted an action in the circuit court for Washington county against the aforementioned defendant, Charles Van Doren, and November 20, 1930, recovered by default a judgment for $1,535.89. The judgment was duly docketed in the judgment lien docket of Washington county. The Holzmeyers had no knowledge of either the institution of the action or of the resulting judgment until December of 1940. Van Doren swore that although he was served with the summons and complaint in the action he did not know until December 9, 1940, that a judgment had been entered against him. Van Doren was termed by a responsible witness an honest man, but we infer that Van Doren's business methods are lax. November 9, 1940, an order was entered upon the appellant's motion which renewed the judgment for a period of ten years.

Johanna Holzmeyer died April 29, 1935. The Van Dorens and the Holzmeyers had been neighbors and

friends for thirty years. In 1940 when payment of the note was overdue five years, the Van Dorens ceased paying interest; nothing had been paid upon the principal. The defaults, however, had not affected the friendship between the plaintiff and the Van Dorens. Some time in 1940, so Charles Van Doren testified, "I told him (plaintiff) that I would turn the place over to him if he would give me my note and mortgage rather than to have him go to a foreclosure." Referring to the plaintiff's response to this offer, he said: "Well, it was all right; so we set a day we would come downtown to get the deed made out."

The plaintiff testified that his acquiescence in Van Doren's proposition was on condition that a deed from the Van Dorens could convey "clear title" to the farm, apart from the delinquent taxes—those he was willing to pay. Van Doren confirmed that statement.

The plaintiff was a farmer and at that time was 72 or 73 years of age. He apparently had had no business experience.

May 17, 1940, the plaintiff and the two Van Dorens called upon an attorney and explained to him that a mortgage given by the Van Dorens to the plaintiff was in default and that the Van Dorens were willing to give the plaintiff a deed to the mortgaged property in satisfaction of the defaulted debt. The plaintiff swore positively that he asked the attorney whether a deed from the Van Dorens would convey "clear title to the place * * *, free title," apart from some delinquent taxes. According to him, the attorney, after questioning the Van Dorens about their title, answered the inquiry in the affirmative. He said that having received that information, "I thought that is all I needed" and was willing to go ahead.

No abstract of title was brought to the attorney and he neither consulted an abstract nor the public records. The plaintiff, according to his testimony, was wholly unfamiliar with the purposes served by an abstract and had never seen or possessed one. He was given none when he purchased his own farm— the purchase was made from the county. He also said that he saw no abstract when he and his wife made the loan to the Van Dorens. He explained: "I never studied law, I don't know what the abstract means." Upon cross-examination, he was pressed for a further explanation and said: "Examine an abstract - - he (attorney) did not call for an abstract. What I know about an abstract? I don't know anything about an abstract."

The attorney, as a witness for the appellant, said that when the plaintiff and the Van Dorens came to him he inferred that "they had made all of their deal before coming to the office" and wanted him to do nothing more than prepare the necessary papers: a release to be signed by the plaintiff and a deed for the signature of the Van Dorens. The plaintiff did not inquire of him, so the attorney testified, concerning the nature of the Van Dorens' title, and he gave no advice upon that subject. He added, however, that Van Doren told him that "there was nothing against the place with the exception of the taxes which Holzmeyer agreed to pay." Referring to this statement, the attorney said: "I think he was perfectly honest in it."

We believe that the attorney told the truth when he said that his employment did not extend to a report upon the condition of the Van Dorens' title, but we feel certain that the plaintiff thought that the attor-

ney's undertaking included advice upon the subject which troubled him—whether a deed from the mortgagors would convey to him "clear title to the place". Seemingly he didn't know that a lawyer could not answer his question without making a title search. After he had made his inquiry he saw the attorney question Van Doren about the Van Doren's title, and this evidently induced him to believe that the attorney was preparing to answer his question. According to Van Doren, the attorney "asked me in regard to the place, if there was anything against it. I told him no, because I didn't know there was. I was honest about it, I didn't know there was anything against it". There was other talk about the Van Doren title, and then the lawyer prepared the deed for the Van Dorens' signatures. It was a general warranty deed. The Van Dorens signed it and the attorney affixed his notarial seal to it. Possibly it was the course of procedure that was pursued after he had asked whether a deed from the mortgagors would convey to him adequate title that caused the plaintiff to believe that his attorney answered his question in the affirmative.

After the Van Dorens had delivered their deed to the plaintiff, the latter signed the release and handed it to the Van Dorens. That having been done, the attorney advised the plaintiff that he should return to the Van Dorens the note and mortgage. The advice was followed. All of the foregoing took place May 17, 1940.

From the above we see that Van Doren misrepresented the condition of the title held by himself and wife. The title was encumbered, not only with a mortgage and delinquent taxes but also with the appellant's judgment. The lien of the latter was subsequent to the

lien of the mortgage. We believe that when Van Doren made the misrepresentation he was not prompted by a deceitful purpose. He had forgotten about the commencement of the appellant's action in 1930 and was unaware of the entry of the judgment. His mistake induced the plaintiff to sign the release and return the note and mortgage. In this way the lien of the appellant's judgment, if the transaction of May 17, 1940, cannot be cancelled, gained for itself priority.

The appellant, as already indicated, renewed his judgment November 9, 1940. Shortly after so doing he secured a writ of execution, sold the Van Dorens' farm and himself became the purchaser upon the execution sale. December 9, 1940, he wrote a letter to the plaintiff which apprised him of the facts just mentioned and sent a copy of it to Van Doren. The plaintiff declared that when he received the letter "it was the biggest surprise I ever had". That was his first knowledge of the judgment. The copy of the appellant's letter which the Van Dorens received likewise was their first information that the action instituted in 1930 had ripened into a judgment. After the receipt of this information the Van Dorens returned to the plaintiff the note and mortgage. According to the record, they are entirely willing to do everything within their power to undo what occurred May 17, 1940.

It is abundantly clear that the plaintiff would not have signed the release, accepted the deed and returned the note and mortgage had he known of the appellant's judgment. Van Doren testified that he would not have suggested the transaction of May 17 had he known of the judgment. Both the plaintiff and Van Doren swore that they had no intention of creating

in behalf of the appellant a priority. Mrs. Van Doren was ill and did not testify.

There is no doubt but that the acceptance by the plaintiff of the Van Doren deed and of his execution of the release was induced by a mistake. The mistake was not confined to him alone but was made to equal extent by the other participants in the transaction of May, 1940, that is, the Van Dorens. All of them were ignorant of the existence of the appellant's judgment. Of course, the three participants were guilty of some negligence. They failed to learn of the existence of the appellant's judgment. A visit to the judgment lien docket would have supplied the information. A mitigating circumstance is the fact that the plaintiff employed an attorney of ability, good standing and broad experience. Unfortunately, the plaintiff misunderstood the duties included in the attorney's undertaking. It is clear that the failure to discover the appellant's judgment did not spring from any desire on the part of the plaintiff to remain ignorant or neglect a customary duty. He wanted to pursue the right and safe course.

The appellant does not claim that a cancellation of the transaction of May 17, 1940, will place him in a worse condition than he was in before that transaction occurred. A cancellation of that transaction and a reinstatement of the note and mortgage will neither harm nor benefit him.

In *Pearce v. Buell*, 22 Or. 29, 29 P. 78, Mr. Justice BEAN said on behalf of this court:

> "No rule of law is better settled than if the holder of a mortgage take a new mortgage as a substitute for a former one, and cancel and release the latter in ignorance of the existence of an intervening lien upon the mortgaged premises, although

> such lien be of record, equity will, in the absence of the intervening rights of third parties, restore the lien of the first mortgage and give it its original priority.''

It will be observed that that statement fits our present suit precisely, with the exception that Mr. Justice BEAN spoke of a situation in which a mortgagee ''takes a new mortgage as a substitute for a former one''. In the present case the holder of the mortgage (plaintiff) took, not ''a new mortgage'' but a deed.

In the Pearce case the facts in all essential particulars were the same as those before us. In it, as in the present case, a creditor of the mortgagor obtained a judgment against him after the execution of the mortgage, and still later, after the mortgage had been released in ignorance of the judgment, claimed for his judgment priority. The Pearce decision denied the claim of priority by permitting the released mortgage to be reinstated.

We quote again from the Pearce decision

> ''The fact that the mortgage was released in ignorance of the existence of the intervening lien, is in equity deemed such a mistake of fact as to entitle the party to relief, although such lien may have been of record.''

We pause to take note of the words ''although such lien may have been of record.''

The contention now under consideration is ''The burden is on the plaintiff to show clearly and satisfactorily, not only that the alleged mistake exists, but that it was mutual and was not caused by plaintiff's own negligence.'' We revert to the words of Mr. Justice BEAN: ''The fact that the mortgage was re-

leased in ignorance of the existence of the intervening lien, is in equity deemed such a mistake * * * although such lien may have been of record.''

The appellant challenges no part of the Pearce decision, with the exception of the eight words last quoted. That part was not dictum. The judgment held by the mortgagor's creditor was properly entered in the judgment lien docket. Hence, the words under consideration were necessary to the decision of the case.

*Katz v. Obenchain,* 48 Or. 352, 85 P. 617, is another instance in which a mortgagee's failure to consult the public records before releasing his mortgage and accepting a deed to the property did not preclude him from securing a decree for the reinstatement of his mortgage. A judgment in that case became a lien against the property after the execution of the mortgage and before its release. In that case, as in this one, the mortgagee failed to consult the judgment lien docket. And likewise in that case, as in this, the mortgagee took, not a new mortgage upon the delivery of the release, but a deed. The decision, in holding that the transaction, which was induced by the mortgagee's ignorance of the judgment, did not extinguish the equitable estate created by the mortgage, said

"Now, the mortgage of the plaintiff was prior in time and right to the lien of Meyer's attachment, and it was therefore manifestly to the interest of the plaintiff that it should not .be extinguished as against any subsequent lien by the conveyance to him of the legal title to the mortgaged property, and as there was no express intention of a merger, a court of equity will, in order to prevent an injury to him, keep the two estates separate and distinct.''

In *Chase v. McKenzie,* 81 Or. 429, 159 P. 1025, this court again refused to hold that the failure of a mortgagee to apprise himself of the facts which appeared in the judgment lien docket denied him the right to reinstate a mortgage which he released in ignorance of a judgment which constituted a lien upon the real property. That result was reached notwithstanding the fact that the court held that the mortgagee "was extremely careless in failing to note the judgment lien upon the land." The following is also taken from that decision:

"Considering the principal question presented by this appeal, the rule is settled in Oregon that, when the holder of a realty mortgage cancels it in ignorance of the existence of an intermediate lien upon the premises, though the charge thus imposed upon the land is of record a court of equity in a suit instituted for that purpose, will, in the absence of intervening rights, restore the original lien and give it priority."

From the foregoing we see that this court has held three times contrary to the proposition advanced by the appellant. He, however, contends that *Metropolitan Life Ins. Co. v. Craven,* 164 Or. 274, 101 P. (2d) 237; *Belcher v. Belcher,* 161 Or. 341, 87 P. (2d) 762, 89 P. (2d) 593; *Welch v. Johnson,* 93 Or. 591, 183 P. 776; and *Lewis v. Lewis,* 5 Or. 169, support his contention.

We have carefully examined all of those decisions, but do not believe that they are adverse to *Pearce v. Buell,* supra, *Katz v. Obenchain,* supra, and *Chase v. McKenzie,* supra. We deem it unnecessary to set forth herein a review of them. As early as *Powell v. Heisler,* 16 Or. 412, 19 P. 109, this court, through Mr. Chief Justice Lord, took note of the impossibility of stating a universal formula which will define the degree of

carelessness of which a party may be guilty in a transaction without barring himself from the right to seek the equitable relief of cancellation or restoration. Some mistakes prejudice no one except those who commit them, and, therefore, cancellation will prejudice no one. In such a case a considerable degree of carelessness can be tolerated. Pomeroy's Equity Jurisprudence, 5th ed., § 856b says:

> "Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby."

Restatement of the Law, Restitution, § 59, says:

> "A person who has conferred a benefit upon another by mistake is not precluded from maintaining an action for restitution by the fact that the mistake was due to his lack of care."

Restatement of the Law, Contracts, § 508, says:

> "The negligent failure of a party to know or to discover the facts, as to which both parties are under a mistake does not preclude rescission or reformation on account thereof."

Many of the decisions of this court which deal with the principle just mentioned are reviewed in *Wolfgang v. Henry Thiele Catering Co.*, 128 Or. 433, 275 P. 33. *Belcher v. Belcher,* supra, receives much attention in the appellant's brief. A reading of it will indicate that Mr. Justice BAILEY, our present Chief Justice, in writing that decision took note of the rule that governs our present case and showed why it was not applicable to that case. In that case the party who sought subrogation was not a mortgagee who had released his lien, but a grantee whose deed contained a covenant

imposing upon him the burden of discharging the first mortgage as a part of the purchase price.

In further support of his contention, the appellant cites: *Garwood v. Eldridge,* 2 N. J. Eq. 145, 34 Am. Dec. 195; *Frazee v. Inslee,* 2 N. J. Eq. 239; *Campbell v. Carter,* 14 Ill. 286; *Barco v. Doyle,* 50 Fla. 488, 39 So. 103; and *Farrell v. Bouck,* 60 Neb. 771, 61 Neb. 874, 84 N. W. 260, 86 N. W. 907.

In *Swedesboro Loan and Building Ass'n v. Gans,* 65 N. J. Eq. 132, 55 Atl. 82, the court, referring to the first of the above-cited decisions and disapproving the reasoning therein, said:

"In that case Chancellor Pennington declined to reestablish certain mortgages which had been cancelled by a mortgagee who purchased the equity of redemption, and by the cancellation, a judgment, of the existence of which the mortgagee was ignorant, became a superior lien upon the property. The chancellor stated the rule to be that relief would not be granted to the complainant if his mistake was as to the legal effects of the cancellation in advancing the lien of the judgment. The remarks of the chancellor were uncalled for, because he found that there was no mistake at law at all."

In *Institute B. & L. Ass'n v. Edwards,* 81 N. J. Eq. 359, 86 Atl. 962, the decision clearly shows that the second of the above-cited decisions dealt with facts dissimilar from those before us. We quote:

"In this respect the case differs from that of Frazee v. Inslee, 2 N. J. Eq. (1 Gr. Ch.) 239, where the inference is that Frazee took his mortgage for valuable consideration. It differs also in respect to the fact that in that case there was evidence that Campbell, the defendant, owner of the canceled mortgage, was informed of the existence of Frazee's mortgage before its cancellation."

The Illinois case, being the third of the above citations, dealt with facts very similar to those in *Katz v. Obenchain,* supra, but held that the two estates had merged. We prefer to adhere to our own precedent and believe that it was correctly decided: Pomeroy's Equity Jurisprudence, 5th ed., § 793, and *McCraney v. Morris,* 170 S. C. 250, 170 S. E. 276, 95 A. L. R. 622. In the decision just cited, the court said

> "The opinion of the distinguished jurist, Mr. Justice Woods, in that case was said by this court in the later case of Owings v. Graham, 120 S. C. 408, 113 S. E. 279, to have been a 'masterful opinion.' After reviewing many, if not all, of the former decisions of this court on the law of merger, including the Richardson and Bleckeley Cases, cited in the report and decree in the lower court, Mr. Justice Woods, for this court, said 'From this review we think it clear the later cases in this state establish the proposition, which as we have seen is in accord with the doctrine universally recognized in other jurisdictions, that in equity at least merger will not take place if opposed to the intention of the parties, affirmatively proved, or to be implied from the fact that merger would be opposed to the interest of the person in whom the different estates or interests became united.' "

The decision also said

> "As suggested by both the circuit judge and master, Mrs. McCraney could have ascertained proper information by examining, or having examined, the public records. If the rights of some subsequent party were in any wise affected by this negligence on the part of Mrs. McCraney, we would, of course, hold her liable because of that negligence. But no subsequent innocent party is affected."

The court held that no merger occurred and it thus preserved to the mortgagee the lien of her mortgage,

notwithstanding the fact that she had accepted a deed from the mortgagor. The report of that decision in the volume last cited is followed by an extensive annotation in which the editor says:

> "It is generally held that a deed by the mortgagor to the mortgagee will not operate as a merger of the mortgage in the fee, in the absence of a showing of an intention to the contrary, where the mortgage is necessary to protect the mortgagee from intervening claims or liens of third persons."

The other two decisions included in the group of five, that is, the Florida and the Nebraska decisions, dealt with facts so dissimilar to those before us that nothing would be gained by a review of them herein. Mistakes are induced by varying degrees of carelessness, but when they have not prejudiced anyone a greater margin of carelessness can be tolerated than under other circumstances.

■ We adhere to the decisions announced in *Pearce v. Buell,* supra, *Katz v. Obenchain,* supra, and *Chase v. McKenzie,* supra. We are satisfied that the omission of the plaintiff to have apprised himself of the information contained in the judgment lien docket does not prevent him from being entitled to the relief which the attacked decree granted. All men may make mistakes, and the law would lose much of the respect which is now accorded to it if it compelled a man to persist in his mistakes when he can be relieved therefrom without injuring the interests of anyone. By relieving the plaintiff of the mistake which he made, the appellant's condition is made no worse; he is not entitled to have it made better through an unfortunate mistake made by the plaintiff. The principles employed in *Pearce v. Buell,* supra, which entitle a mortgagee, who

through mistake has released his mortgage, to reinstatement of the obligation have been many times employed by this court. The principle which underlies *Katz v. Obenchain,* supra, to the effect that a merger will not be invoked, if it is to the interests of the purchasing mortgagee to keep the estates separate, was twice re-employed after the announcement of that decision.

The above disposes of the controlling contention presented by the appellant. We find no error in the attacked decree. It will be affirmed. Costs and disbursements will be allowed to neither party.