**Brent WESTGARD; Denese Westgard; and Peoples Bank & Trust of Parshall, North Dakota, a corporation, Plaintiffs and Appellants,**

v.

**FARSTAD OIL, INC., Defendant, Third–Party Plaintiff and Appellee,**

v.

**Arlo JACOBSON and Barbara Jacobson, Third–Party Defendants.**

**Civ. No. 880217.**

**Supreme Court of North Dakota.**

**March 21, 1989.**

Bair, Brown & Kautzmann, Mandan, for plaintiffs and appellants; argued by Thomas B. Bair.

Pringle & Herigstad, Minot, for defendant, third-party plaintiff and appellee; argued by Jan M. Sebby.

GIERKE, Justice.

Brent Westgard, Denese Westgard, and Peoples Bank & Trust of Parshall [Bank] appeal from a summary judgment in their quiet title action which declared that Farstad Oil, Inc. [Farstad], had a valid mortgage lien of first priority against certain

real estate. The trial court also granted summary judgment in favor of Farstad on its counterclaim against the plaintiffs and on its third-party action against Arlo and Barbara Jacobson seeking foreclosure of its mortgage on the property. We reverse and remand.

In November 1980, Arlo and Barbara Jacobson granted a mortgage to the Bank to secure a $35,000 loan for the purchase and construction of a home on a residential lot they owned in Parshall. This mortgage, duly filed for record in November 1980, was a first lien on the property. The loan was not paid when due, and in June 1981, the loan was renewed and a new promissory note for $36,475 due in July 1982 was executed. The Bank executed a satisfaction of the November 1980 mortgage but retained possession of the document. The new mortgage was filed for record on July 14, 1981.

In September 1981, the Jacobsons borrowed an additional $2,500 from the Bank, payable in 30 monthly installments. They granted a second mortgage on the property to the Bank to secure the loan. This mortgage was filed for record in October 1981. In August 1982, after the June 1981 loan was not paid, the loan was renewed and the parties executed a new note for $36,032.78 due in September 1983. The Bank executed a satisfaction of the June 1981 mortgage and retained possession of the document. The Jacobsons granted the Bank another mortgage on the property which was filed for record in September 1982.

The Jacobsons failed to pay the loans and in October 1983, the August 1982 and September 1981 loans were consolidated and the parties executed a new note for $35,756.76 due in April 1985. The Bank executed a satisfaction of the August 1982 and September 1981 mortgages and retained possession of the documents. The new mortgage was filed for record in November 1983.

In the meantime, Arlo Jacobson, who was in the business of selling petroleum products, had become indebted to Farstad, one of his suppliers. In May 1984, the Jacobsons executed a $30,000 promissory note to Farstad, payable in April 1986, and granted to Farstad a mortgage on the property to secure the note. This mortgage was filed for record in June 1984. It is undisputed that Farstad had knowledge of the Bank's prior mortgage on the property.

The Jacobsons failed to pay the October 1983 loan from the Bank, and in August 1985, the loan was renewed and a new note for $36,692.70 due in 1988 was executed. The Bank executed a satisfaction of the October 1983 mortgage, retained possession of the document, and filed the new mortgage for record in September 1985.

The Jacobsons ultimately defaulted and in April 1987, the Bank commenced an action to foreclose its August 1985 mortgage. The attorney hired by the Bank to foreclose the mortgage did not check the Register of Deeds office for liens and encumbrances on the property other than the mortgages granted by the Jacobsons to the Bank. The lawsuit was dismissed by stipulation after the Jacobsons gave the Bank a deed in lieu of foreclosure.

In September 1987, the Bank conveyed the property to the Westgards by quit claim deed, and the Westgards granted a mortgage on the property to the Bank to secure a loan of $33,000. The quit claim deed and mortgage, as well as the satisfactions of the mortgages granted by the Jacobsons in 1980, 1981, 1982, and 1983, were filed for record in October 1987. Only after these transactions were completed did the Bank become aware of Farstad's 1984 mortgage, which had become elevated to first priority status as of record.

The Bank and the Westgards brought this quiet title action against Farstad seeking reinstatement of the October 1983 mortgage and a declaration that its mortgage was superior to Farstad's 1984 mortgage. Farstad counterclaimed and brought a third-party complaint against the Jacobsons seeking foreclosure of its mortgage. The trial court granted summary judgment dismissing the Bank's complaint and foreclosing Farstad's mortgage on the property. The Bank and the Westgards [hereinafter collectively referred to as the Bank] appealed.

Summary judgment is appropriate when there is no dispute as to material facts, or when, although factual disputes exist between the parties, the law is such that resolution of the factual disputes will not change the result. *Russell v. Bank of Kirkwood Plaza*, 386 N.W.2d 892, 897 (N.D.1986). On appeal we determine whether the information provided to the trial court, when viewed in the light most favorable to the losing party, precludes the existence of a genuine issue of material fact and entitles the moving party to judgment as a matter of law. *Binstock v. Tschider*, 374 N.W.2d 81, 83 (N.D.1985).

The Bank asserts that the trial court erred in not granting summary judgment in its favor because under the undisputed facts in this case the Bank is entitled to have its mistakenly satisfied mortgage reinstated to prevent Farstad from unjustly enriching itself at the Bank's expense. We agree.

In *Strehlow v. Fee*, 36 N.D. 59, 161 N.W. 719, 720 (1917), a case similar to the present case, this court stated:

"The rule of law, indeed, is well established that, where an instrument has been surrendered or discharged, or an incumbrance (sic) or charge has been satisfied through mistake, the party making the same is entitled to be replaced in his original position, provided only that other creditors have not been induced by the action of the plaintiff or petitioner to change their position and have not lost any substantial and material rights by such action."

*Strehlow v. Fee* involved an action to reinstate and foreclose two prior mortgages which were released in ignorance of the existence of three judgment liens. The plaintiff had instructed an abstract company and his attorney to place the satisfactions upon record only if they were convinced that the record title would be clear.

The abstract did not show the existence of the judgment liens, nor were they discovered by the attorney. The court stated:

"The question, indeed, is one of mistake, and not of negligence. It is not a case of an interference with any vested rights. It is not a case for the application of the rule that, where one of two innocent persons must suffer, he whose act first made the loss possible must bear the burden. The judgment creditors lost nothing by the mistaken action of the plaintiff. Their judgment liens are still intact.... Such being the case, there can be no ground for denying the plaintiff relief on account of negligence or for any other cause.... Even though the abstract company and [the attorney] may have, to a certain extent, been the agents of the plaintiff, Strehlow, it is clear that they too acted as the result of a mistake, and, as we before stated, this is not a case where negligence is involved or is material." *Strehlow v. Fee, supra,* 161 N.W. at 720–721.

Farstad asserts, in effect, that *Strehlow v. Fee* was wrongly decided because the court "neglected to acknowledge and enforce statutory provisions regarding the real property recording statutes and regarding judicial relief for 'mistake.'" While these statutory provisions were not referred to in *Strehlow v. Fee*, we do not believe that they require a different result.

Farstad claims that the equitable rule applied in *Strehlow v. Fee* cannot be reconciled with the statutory definition of "mistake" found in § 9–03–13, N.D.C.C.[1] This court rejected a similar argument in *Hodge v. Dunlop*, 49 N.D. 125, 190 N.W. 551 (1922). In that case the court reinstated a mortgage which had been satisfied of record without the plaintiff having examined the records or obtained an abstract of title before he caused the mortgage to be released. The defendant argued that the

---

1. Section 9–03–13, N.D.C.C., provides:

"*9–03–13. Mistake of fact defined.* Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:

"1. An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or

"2. Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has not existed."

equitable rule recognized in *Strehlow v. Fee* had been changed by the definition of "mistake" found in the predecessor statute to § 9–03–13. The court disagreed, concluding that § 9–03–13 "announces no new rule, but is merely a statutory enactment of the well-established equitable rule on the subject." *Hodge v. Dunlop, supra,* 190 N.W. at 553. Thus, the equitable rule for reinstating a mortgage satisfied by mistake has not been altered by § 9–03–13.

Farstad asserts that judicial relief is nevertheless unavailable to the Bank under § 9–03–13 because the Bank neglected its legal duty allegedly imposed by § 6–03–05, N.D.C.C.,[2] to ascertain the value and priority of the 1985 Jacobson mortgage. *See also Security State Bank of Wishek v. State,* 181 N.W.2d 225, 233 (N.D.1970). Even assuming that § 6–03–05 imposed upon the Bank a duty to check the real estate records, we believe the Bank satisfied this obligation when it hired the attorney to handle the Jacobson mortgage foreclosure which ultimately led to the recording of the prior mortgage satisfactions. *See generally Connecticut National Bank v. Chapman,* 153 Conn. 393, 216 A.2d 814 (1966); *Provident Co-operative Bank v. James Talcott, Inc.,* 358 Mass. 180, 260 N.E.2d 903 (1970); *cf. Strehlow v. Fee, supra.*[3]

Farstad also asserts that *Strehlow v. Fee* ignores the dictates of § 1–01–06, N.D. C.C., which provides that "there is no common law in any case where the law is declared by the code." Because *Strehlow v. Fee* is premised upon principles of equity, and "equity does not apply where the law is declared by statute" [*State by Workmen's Comp. Bureau v. Clary,* 389 N.W. 2d 347, 351 (N.D.1986)], Farstad argues that the constructive notice provisions of the recording statutes in Chapter 47–19, N.D.C.C.,[4] displace the equitable rule. We disagree.

**2.** Section 6–03–05, N.D.C.C., provides:

"*6–03–05. Loans on real estate—Regulation —Limitation.* No association may own or carry among its assets at any one time loans dependent primarily upon real estate security in an aggregate sum in excess of the amount of the capital stock of such association paid in and unimpaired plus the amount of its unimpaired surplus fund, or in excess of sixty-six and two-thirds percent of the amount of its time and savings deposits, whichever is the greater. Before any such loan is made the board of directors shall appoint a committee which shall make actual inspection of the security offered and shall appraise both the land and the improvements thereon, if any, and shall report to the board of directors, in writing, the results of the appraisal together with any other facts relating to such proposed loan and proposed security as will best enable the board to determine if the loan shall be granted. Such written report must be made a permanent record in the bank's files and must be made available to the commissioner. No director may act as an appraiser of his own property nor of property offered as security for loans the proceeds of which are to be used for his benefit. No unamortized loan secured by realty may be made for a period exceeding five years in an amount exceeding fifty percent of the appraised value of the real estate offered as security.

"Any such loan may be made in an amount not to exceed ninety percent of the appraised value of the real estate offered as security unless the amount above this limitation is government guaranteed or insured by a private mortgage loan within a period of not more than thirty years."

**3.** We note that the conduct involved in *Strehlow v. Fee* (failure to discover defect in title) and *Hodge v. Dunlop* (failure to search records) reflects that, for purposes of the equitable rule on reinstating a mortgage satisfied by mistake, the "mistake" may be induced by what might otherwise be considered negligent conduct. This concept of providing relief for a "mistake" induced by negligence differs from other areas of the law [*compare,* for example, Rule 60(b), N.D. R.Civ.P.; *First American Bank v. McLaughlin Inv.,* 407 N.W.2d 505, 507–508 (N.D.1987); and *Hamilton v. Hamilton,* 410 N.W.2d 508, 516 (N.D.1987)], and finds its justification in the absence of any resulting harm to third parties. As the court reasoned in *Holzmeyer v. Van Doren,* 172 Or. 176, 139 P.2d 778, 784 (1943): "Mistakes are induced by varying degrees of carelessness, but when they have not prejudiced anyone, a greater margin of carelessness can be tolerated than under other circumstances."

**4.** Farstad specifically relies upon §§ 47–19–19, 47–19–41, and 47–19–45, N.D.C.C., which provide:

"*47–19–19. Effect of recording.*—The record of any instrument shall be notice of the contents of the instrument, as it appears of record, as to all persons."

"*47–19–41. Effect of not recording—Priority of first record—Constructive notice—Limitation and validation.*—Every conveyance of real estate not recorded shall be void as

The primary "purpose of the recording statutes is to give notice of and to protect rights, as against subsequent purchasers or encumbrancers, not to create rights not possessed, either of record or in fact." *Magnuson v. Breher*, 69 N.D. 197, 284 N.W. 853, 855 (1939). The cases relied upon by Farstad for the rule that a person dealing with real property is charged with notice of properly recorded instruments affecting title involve situations where the parties to which the rule was applied were subsequent purchasers. The Bank was not a subsequent purchaser in this case, but held a prior mortgage. Because the recording of a mortgage is not notice to a prior purchaser [*see Cranston v. Winters*, 238 N.W.2d 647, 653–654 (N.D.1976); *First National Bank of Dickinson v. Big Bend Land Co.*, 38 N.D. 33, 164 N.W. 322 (1917) Syllabus ¶ 2], Farstad's recording of its subsequent mortgage did not constitute notice to the Bank of its contents.[5] We there-

fore find no inconsistency between the recording statutes and the equitable rule recognized in *Strehlow v. Fee* because the statutes do not specifically address the situation involved in this case. A "statute will be construed as a continuation of the common law and not as excluding the common law on that part of the subject not covered by the statute." *Reeves & Co. v. Russell*, 28 N.D. 265, 148 N.W. 654, 655 (1914) Syllabus ¶ 10. *See also Tarpo v. Bowman Public School District No. 1*, 232 N.W.2d 67 (N.D.1975).

The undisputed facts of this case call for application of the equitable principle recognized in *Strehlow v. Fee*. Rather than the aberration envisioned by Farstad, the rule allowing a mortgage which has been released or satisfied through accident or mistake to be restored to its original priority unless the rights of innocent third persons are affected is widely recognized. *E.g.*, 55 Am.Jur.2d *Mortgages* § 504 (1971); 59

---

against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof, whose conveyance, whether in the form of a warranty deed, or deed of bargain and sale, or deed of quitclaim and release, of the form in common use or otherwise, first is deposited with the proper officer for record and subsequently recorded, whether entitled to record or not, or as against an attachment levied thereon or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of any conveyance. The fact that such first deposited and recorded conveyance of such subsequent purchaser for a valuable consideration is in the form, or contains the terms, of a deed of quitclaim and release aforesaid, shall not affect the question of good faith of the subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof. This section shall be legal notice to all who claim under unrecorded instruments that prior recording of later instruments not entitled to be recorded may nullify their right, title, interest or lien, to, in or upon affected real property. No action affecting any right, title, interest or lien, to, in or upon real property shall be commenced or maintained or defense or counterclaim asserted or recognized in court on the ground that a recorded instrument was not entitled to be recorded. The record of all instruments whether or not the same were entitled to be recorded shall be deemed valid and sufficient as the legal record thereof."

"47–19–45. *Record—Constructive notice of execution—Instruments recorded admissible in evidence without further proof.*—The depositing with the proper officer for record of any instrument shall be constructive notice of the execution of such instrument to all purchasers and encumbrancers subsequent to such depositing, if such instrument is subsequently recorded. All instruments entitled to record, the record of all instruments, or a duly certified copy of such record, shall be admissible in evidence in all the courts of this state and may be read in evidence in all of the courts of this state without further proof."

5. Although the Westgards, as opposed to the Bank, may be considered subsequent purchasers charged with notice of Farstad's mortgage, we do not believe that under the circumstances this fact deprives the Westgards of relief or renders the equitable rule governing reinstatement of a mortgage inapplicable. The quit claim conveyance to the Westgards and the execution of their mortgage to the Bank occurred on September 25, 1987. The quit claim deed and mortgage were filed for record on October 1, 1987, prior to the recording of the satisfactions of the mortgages granted to the Bank by the Jacobsons, which occurred on the same date. Thus, at the time the quit claim deed and mortgage were executed, the state of the record title to the property reflected that the Bank continued to have a lien of first priority against the property. The principle that a person dealing with real property is charged with notice of properly recorded instruments therefore does not affect the status of the Westgards in this proceeding.

C.J.S. *Mortgages* § 282(c)(2) (1949); 9 G. Thompson, Commentaries on the Modern Law of Real Property § 4813 (1958). The soundness of the rule is explained with eloquent simplicity in *Holzmeyer v. Van Doren,* 172 Or. 176, 139 P.2d 778, 784 (1943):

> "All men may make mistakes, and the law would lose much of the respect which is now accorded to it if it compelled a man to persist in his mistakes when he can be relieved therefrom without injuring the interests of anyone. By relieving the plaintiff of the mistake which he made, the appellant's condition is made no worse; he is not entitled to have it made better through an unfortunate mistake made by the plaintiff."

In this case Farstad would not be injured in any way by reinstatement of the Bank's October 1983 mortgage. Farstad had knowledge that its mortgage was a second lien on the property at the time it was given. Reinstatement of the Bank's mortgage will not adversely affect that second priority status. We are not persuaded by Farstad's argument that it would be prejudiced because when it obtained the mortgage with knowledge of its second priority status, it did so "with the expectation that someday it would be first in line." The only reasonable expectation Farstad could have entertained is to achieve first priority status when the loan secured by the Bank's mortgage was paid. That event did not occur.

Under the undisputed facts of this case, we conclude that the trial court erred as a matter of law in refusing to reinstate the Bank's October 1983 mortgage. The summary judgment is reversed and the case remanded for entry of summary judgment in favor of the Bank.

ERICKSTAD, C.J., VANDE WALLE and LEVINE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of MESCHKE, J., disqualified.